**UNITED STATES**

**v.**

**J. R. WATKINS CO. et al.**

**Crim. A. No. 7574.**

United States District Court
D. Minnesota, Third Division.
Feb. 25, 1954.

**156**

C. Stanley McMahon, Winona, Minn., Linus J. Hammond, St. Paul, Minn., and Norman J. Morrison, Washington, D. C., for defendants, in support of motion.

George E. MacKinnon, U. S. Atty., St. Paul, Minn. (Kenneth W. Gemmel, John W. Coggins, and William P. Crewe, Chief Counsel's Office, Internal Revenue Service, Washington, D. C., and Eugene B. Harks, Regional Counsel's Office, St. Paul, Minn., of counsel), for the United States, in opposition thereto.

NORDBYE, Chief Judge.

This case comes before the Court on defendants' motion to dismiss the indictment.

The indictment consists of a conspiracy count and a substantive count. The conspiracy count alleges that the defendants

"did commit an offense against the laws of the United States of America in violation of 18 U.S.C. § 371, by conspiring together to commit offenses against the United States, and also to defraud the ·United States, in violation of 26 U.S.C. Sec. 3072, 3115(a) and 3116, and Sec. 182.864 of Regulations 3 Industrial Alcohol (1942 Ed.) and 26 U.S.C. Sec. 2800(a)(1) and 3111, by knowingly selling and causing to be sold

a liquid medicinal preparation for internal human use, which liquid medicinal preparation is and was known as Watkins Liniment (Red) and is and was made in part from specially denatured alcohol, which the Defendants withdrew, obtained, possessed, used and transported without the payment to the United States of the lawful tax due thereon."

This count also alleges the continuance of the conspiracy from September, 1928, to September 30, 1950, and concludes with allegations of twelve overt acts allegedly committed in pursuance of the conspiracy.

The substantive count alleges that three of the defendants, J. R. Watkins Company, a Maryland corporation, Howard F. Williams, and E. L. King, Jr.,

"Between the 1st day of March, 1950, and June 30, 1950, in the City of Winona, State and District of Minnesota, and in Memphis, Tennessee, and in Newark, New Jersey, * * * did wrongfully and unlawfully withdraw and use and caused to be withdrawn and used in the manufacture of a liquid medicinal preparation for internal human use, known as Watkins Liniment (Red), specially denatured alcohol without payment to the United States of the lawful tax due thereon under the Internal Revenue Code and regulation issued thereunder."

The defendants' attack upon both counts of the indictment, for the purposes of convenience of discussion, may be said to follow two general lines. The first relates to defects in the indictment itself, while the second relates to the meaning and validity of the statutes and regulation upon which the indictment is based. The contentions wil be considered in the order suggested above.

The defendants' two objections to the conspiracy count are (1) that the indictment fails to allege the essential elements of a conspiracy, to wit, an agreement, the purpose of the agreement, and the means by which it was to

be accomplished; and (2) that the indictment fails to allege the essential facts with sufficient particularity.

The allegation that there was a conspiracy between the named defendants sufficiently alleges an agreement, and the purpose to defraud the United States in violation of the named statutes likewise sufficiently appears from a reading of the conspiracy count. The primary objection urged, however, is that the indictment charges what the defendants did, rather than that which they agreed to do; that is, defendants contend that the clause of Count 1 beginning "by knowingly selling and causing to be sold a liquid medicinal preparation for internal use" merely charges a joint commission of a crime rather than setting forth an element of a conspiracy. But while the indictment is not a model of good pleading, it fairly appears that the clause in question does not purport to allege what was done, but rather it assumes to define the scope of the agreement to defraud and to commit the offenses to which reference is made therein. In other words, the indictment charges that the unlawful agreement was to be carried out by the parties "by knowingly selling and causing to be sold a liquid preparation for internal human use." A bill of particulars—a motion for which is now pending—will permit the defendants to obtain further information which may be necessary in order to prepare their defense on the facts.

■ There are several objections which the defendants raise as to the sufficiency of the second count of the indictment. It is contended that (1) the count is so vague that it does not charge an offense; (2) the count contains a misjoinder of offenses and of parties; (3) this Court has no jurisdiction of crimes committed outside the District of Minnesota, to wit, in New Jersey and Tennessee; and (4) the count is duplicitous in that it charges offenses being committed in Minnesota, New Jersey and Tennessee. However, after consideration of this count as set forth in the indictment, it fairly appears that the offense charged is a statutory one and the indictment is laid substantially in the words of the statute. This is sufficient as against a motion to dismiss. Ledbetter v. United States, 1898, 170 U.S. 606, 609, 18 S.Ct. 774, 42 L.Ed. 1162; Mellor v. United States, 8 Cir., 1947, 160 F.2d 757, 760, certiorari denied 331 U.S. 848, 67 S.Ct. 1734, 91 L.Ed. 1858; Lynch v. United States, 5 Cir., 1951, 189 F.2d 476, 479, certiorari denied 342 U.S. 831, 72 S.Ct. 50, 96 L.Ed. 629.

The question of misjoinder of offenses and parties requires a consideration of Rules 8(a) and (b), Federal Rules of Criminal Procedure, 18 U.S.C.A. Rule 8(a) provides.

"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Rule 8(b) provides.

"Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

■ At the outset, it should be noted that the three defendants charged with the substantive offense are also charged in the conspiracy count. The offenses are apparently based upon transactions which, within the meaning of Rule 8(a), are connected together, or which constitute parts of a common scheme or plan. Consequently, in that the charge in the conspiracy count and the charge in the substantive count relate to similar acts and circumstances, in all probability

both counts will depend in part, at least, upon substantially the same proof. And in that the period during which the substantive offense allegedly occurred is within the period of the continuance of the alleged conspiracy, the objections lodged by the defendants as noted seem devoid of any real substance. Moreover, there is no showing that any of these defendants will be prejudiced by reason of the joinder, and likewise there is also an absence of any showing that any confusion or undue complexity will result from the joinder.

Defendants' objection as to Count II which pertains to the jurisdiction of this Court and their contention that the count is duplicitous may be considered together. The pertinent portions of Section 3072, 26 U.S.C.A., with reference to Count II, reads,

"* * * any person who uses alcohol withdrawn from bond under the provisions of said section for manufacturing any beverage or liquid medicinal preparation * * * [shall be guilty of an offense]."

■■ It will be noted that the offense is using denatured alcohol withdrawn from bond for the manufacture of a liquid medicinal preparation, and therefore the words in the indictment "withdrawn" and "causing to be withdrawn" may be regarded as surplusage. Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793. Stripped of the surplusage, Count II charges, therefore, that the defendants used in the manufacture of liquid medicinal preparations for internal human use special denatured alcohol without payment to the United States of the lawful tax due thereon. The addition of the phrase "causing to be used" does not charge an additional offense as defendants contend, but merely makes explicit that which is implicit in view of the aiding and abetting statute found in 18 U.S.C.A. § 2. As thus construed, Count II charges the defendants with the single offense of using such denatured alcohol in the manufacture of the liniment referred to in the indictment. But defendants urge that

this Court is without jurisdiction over offenses committed in the Districts of New Jersey and Tennessee. However, if the offense which was committed was a single offense committed by each of the parties in each of the three separate places, jurisdiction rests in this Court. Section 3237, Title 18, so far as here relevant, provides,

"Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another * * * may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

Whether a single offense was committed by these defendants in each of these three districts as mentioned in Count II, is a question that this Court cannot determine on a motion to dismiss. That matter may be more properly explored and reached at the trial, or possibly on a motion for a bill of particulars.

The basic and fundamental question presented on this motion to dismiss the indictment is whether specially denatured alcohol on which no tax has been paid may, under the Internal Revenue Act and the regulation thereunder, be used in the manufacture and sale of a liquid medicinal preparation for internal human use. This question embraces many considerations and presents many ramifications. No tax is levied on denatured alcohol when used in accordance with the Internal Revenue laws, but Section 3111, Title 26 U.S.C.A., does impose a tax on any person who uses denatured alcohol in violation of laws and regulations in force which pertain thereto. Whether any law or valid regulation has been violated by these defendants, as the indictment charges, depends upon the applicability and the construction of Section 3072, 26 U.S.C.A.

Section 3072, so far as it is applicable to the facts alleged in both counts of the indictment, provides that it is a crime for a person (1) to use alcohol withdrawn from bond under the provisions of

Section 3070(a), 26 U.S.C.A., for manufacturing any beverage or liquid medicinal preparation; (2) to knowingly sell any beverage or liquid medicinal preparation made in whole or in part from such alcohol; and (3) to knowingly violate any of the provisions of Section 3070(a) or Section 3073, Title 26 U.S.C.A. It seems clear that Section 3072 can be violated only with respect to alcohol which has been withdrawn from bond under the provisions of Section 3070(a) and which has been used in the manner prohibited by Section 3072. Thus, two controlling questions are presented: (a) Is alcohol distilled and denatured by an industrial alcohol plant withdrawn from bond under provisions of Section 3070 (a)? And (b) Is the use in liquid medicinal preparations of denatured alcohol forbidden by Section 3072, or is it the use in liquid medicinal preparations of alcohol which has been withdrawn for denaturing without tax being paid, but which has not been denatured, that is forbidden? If the view last expressed is the proper one, then obviously no offense has been committed by these defendants under Section 3072 of the Internal Revenue Act.

The only statute in the Internal Revenue Code which the Government refers to as prohibiting the use of denatured alcohol in liquid medicinal preparations is Section 3072. Consequently, unless the denatured alcohol allegedly used in Watkins' liniment referred to in the indictment was withdrawn from bond under the provisions of Section 3070(a), no offense has been committed under Section 3072. Defendants' position is that, under the now prevailing system of denaturing alcohol, no denatured alcohol is withdrawn from bond under the provisions of Section 3070(a) because defendants urge that alcohol is no longer denatured at places authorized by that section. Moreover, it is contended that the National Prohibition Act, 27 U.S.C.A. § 1 et seq., repealed Section 3070(a) in that that section was in direct conflict with the provisions of the National Prohibition Act, and if Section 3070(a) was

not repealed, it was rendered totally inapplicable to the denaturation of alcohol by the National Prohibition Act, Title III.

Congress enacted the first Denatured Alcohol Act in 1906, 34 Stat. 217. This Act was amended in 1907 in regard to matters not particularly material herein. 34 Stat. 1250. Under these acts, alcohol to be withdrawn from bond for denaturing under the provisions of Section 3070(a) had to be denatured by a "registered distiller". Later, the Denatured Alcohol Act of 1913, 38 Stat. 114, 199, was enacted by Congress, and this Act assumed to liberalize the denaturing of alcohol. In that Act, any person under certain regulations and restrictions and not just registered distilleries could produce denatured alcohol. The 1913 Act authorized alcohol to be denatured at so-called Industrial Distilleries and Central Distilling and Denaturing Plants, and the purpose of the Act was to enable farmers and persons of modest means and capital to manufacture alcohol for denaturation at a reasonable cost. A detailed scheme of control had been already set up under the 1906 Act, and therein the use of denatured alcohol was forbidden in both internal and external liquid medicinal preparations. However, under the 1913 Act, the Commissioner apparently relaxed his former ruling with reference to the use of denatured alcohol for medicinal purposes, and subject to certain conditions allowed its use in liquid medicinal preparations for external use, where the denaturing took place in central distilling and denaturing plants authorized by the 1913 Act. And for some reason not entirely clear, the 1913 Act with reference to denaturing had no proscriptions against the use of denatured alcohol for medicinal purposes, only that the alcohol denatured be not fit for use as an intoxicating beverage. Defendants urge that the passage of the 1913 Act and the establishment of the so-called central distilling and denaturing plants thereunder, as distinguished from registered distilleries referred to in the 1906 Act, indicates

that Congress intended to limit Section 3072 to alcohol denatured by and withdrawn from registered distilleries under the provisions of Section 3070(a). However, whether there was in existence from the enactment of the 1913 Act until the latter was repealed by the National Prohibition Act, a dual system for denaturing alcohol whereby alcohol denatured at a registered distillery under Section 3070(a) could not be used for liquid medicinal purposes of any kind, while alcohol denatured at central distilling and denaturing plants under the 1913 Act could, by the Commissioner's ruling, be used for external medicinal purposes, is not controlling on this motion. The 1913 Act was not intended to supplant the rather elaborate control set up for the denaturing of alcohol for the arts and industries and for fuel, light and power, as found in the 1906 Act. At best, the 1913 enactment was an attempt on a relatively small scale to liberalize the manufacture of alcohol in order to make it possible for the farmers and associations of fruit growers to manufacture denatured alcohol at a reasonable cost and free from certain restrictions which otherwise would render it quite impossible for a small distillery to operate profitably. As stated, the reason for the relaxation by the Commissioner in his ruling as to the use of denatured alcohol for external medicinal purposes may not be entirely clear. But it is significant that at no time has the Commissioner ever ruled, nor has there ever been any regulation permitting or countenancing the use of denatured alcohol, whether denatured by a registered distillery under the 1906 Act or denatured by a so-called central distilling and denaturing plant under the 1913 Act, for internal medicinal use. That the Commissioner continued to restrict the use of denatured alcohol under the 1913 Act in certain medicinal preparations seems entirely consistent with the Government's position herein that the uses of denatured alcohol continued to be controlled by the 1906 Act. The excise tax on the production of alcohol was primarily directed to its production and use for beverage purposes. Obviously, the difficulties in the control of non-tax alcohol for beverage uses would be enhanced if internal liquid medicinal use were permitted, and the prohibitions against liquid medicinal use for denatured alcohol in the 1906 Act may well have been considered as being inappropriate and unnecessary as to external medicinal use. In endeavoring to reconcile the various sections of the Internal Revenue Code, the Court must give due consideration to the whole system of the revenue laws, their purposes and objects, and in absence of a clear intention of Congress, any inconsistency which does not evidence a congressional purpose to do away with certain existing revenue laws would not justify the drastic consideration which the defendants urge herein. The inconsistency which may appear as between the wording and the administration of the 1913 Act, and the wording and administration of the 1906 Act, is only significant in so far as it may tend to serve as a historical background in interpreting the present internal revenue laws.

Were Sections 3070(a) and 3072 repealed by the National Prohibition Act? Section 19, Title III, of the Act, 27 U.S.C.A. § 89, contains a general repealing clause which repealed "All prior statutes relating to alcohol as defined in this title * * * in so far as they are inconsistent with the provisions of this title." When the Supreme Court, in United States v. Yuginovich, 1921, 256 U.S. 450, 41 S.Ct. 551, 65 L.Ed. 1043, construed this section as repealing prior statutes that were merely inconsistent with the National Prohibition Act, Congress responded by enacting the Willis-Campbell Act, 42 Stat. 222, which made plain that only statutes that were in extreme contradiction to the National Prohibition Act were meant to be repealed. Section 5 of the Willis-Campbell Act, 27 U.S.C.A. § 3, provided that "All laws in regard to the manufacture and taxation of and traffic in intoxicating liquor, and all penalties for violations of such laws that

were in force [when the National Prohibition Act was enacted,] shall be and continue in force, as to both beverage and non-beverage liquor, except such provisions of such laws as are directly in conflict with any provision [of the National Prohibition Act or of this Act] * * *." Defendants fail to point out any persuasive repugnancy or irreconcilability between the Prohibition Act and Sections 3070(a) and 3072, and the courts which have been presented with similar contentions have ruled contrary to defendants' position herein; that is, where the question has come before the courts they have held that Sections 3070(a) and 3072 were not repealed by the National Prohibition Act. Bilodeau v. United States, 9 Cir., 1926, 14 F.2d 582, certiorari denied, 273 U.S. 737, 47 S.Ct. 245, 71 L.Ed. 866; United States v. Bakes, 7 Cir., 1939, 107 F.2d 579; United States v. Bornn, 2 Cir., 1939, 104 F.2d 641; Morgenthau v. Miffin Chemical Corp., 3 Cir., 1937, 93 F.2d 82; United States v. Van Schaack Bros. Chemical Works, D.C.Ill., 1940, 33 F.Supp. 822. And defendants' contention or suggestion that the repeal of the Willis-Campbell Act by the Liquor Law Repeal and Enforcement Act of 1935, 49 Stat. 872, had the effect of repealing laws revived by the Willis-Campbell Act, seems without substance for the reasons stated in United States v. Minker, D.C.Md., 1937, 19 F.Supp. 409.

Defendants strenuously urge that if there was not a direct repeal of Sections 3070(a) and 3072, the National Prohibition Act rendered these sections wholly inapplicable to alcohol produced and denatured in accordance with the National Prohibition Act, Title III, which related to industrial alcohol and which is still in force as Section 3100 et seq., 26 U.S.C.A. Defendants contend that the National Prohibition Act established an independent system for the withdrawal from bond of denatured alcohol which rendered Sections 3070(a) and 3072 wholly inapplicable to the withdrawal of denatured alcohol. Whether the National Prohibition Act established an independent system for the regulation of denatured alcohol or whether the Act merely incorporated the 1906 Act by reference depends upon the construction and interpretation to be accorded to Section 11 of Title III of the Prohibition Act, 26 U.S.C.A. § 3108(a). This section provides,

"Alcohol produced at any industrial alcohol plant or stored in any bonded warehouse may, under regulations, be withdrawn tax free as provided by existing law from such plant or warehouse for transfer to any denaturing plant for denaturation, or may, under regulations, before or after denaturation, be removed from any such plant or warehouse for any lawful tax-free purpose."

It must be recognized that the only sections of the Internal Revenue Code which pertain to the uses of tax-free denatured alcohol when the National Prohibition Act was passed were Sections 3070(a) and 3072. The "existing law" referred to in Section 3108(a) regulating the tax free withdrawal of alcohol must have referred to Section 3070(a) and the "lawful tax-free purposes" referred to in said section would seem to refer to the uses as are set forth and regulated in Section 3072. The argument that Section 3108(a) merely intended to adopt the existing law relating to the movement of existing alcohol to denaturing plants, which movement and transfer had not been covered by the National Prohibition Act, is not without some persuasive force, but it overlooks and disregards the significant words of Section 3108(a)—"tax free." That is, Section 3108(a) is not confined to the mere withdrawal of existing alcohol to denaturing plants, but rather is concerned with the withdrawal "tax free as provided by existing law". The quoted words would seem to refer to something more than a provision for the transfer of alcohol for denaturation, and it may be pointed out that this view finds support in the compilation of excise taxes made for the Congressional Joint Committee

on internal revenue taxation, wherein it is stated that the term "existing law" in Section 3108(a) included Section 3070. See Provisions of the Internal Revenue Code relating to excise taxes, p. 243 (U. S. Government Printing Office 2d Edition, March 31, 1949).

The enactment of the National Prohibition Act was not intended to accomplish complete revamping of the existing internal revenue system with respect to denatured alcohol. The primary object of the National Prohibition Act was to prohibit the manufacture and sale of alcoholic beverages. And it is entirely reasonable to assume that Congress intended to retain and adopt the provisions of the law with reference to the denaturing of alcohol, the permitted uses, and the regulations pertaining thereto. There is no other rational explanation for the specific language which Congress utilized in Section 3108(a).

However, it is urged that, even though it may be determined that Section 3108(a) incorporated Sections 3070 (a) and 3072 as existing law, the provisions of Section 3072 can only apply to alcohol withdrawn under Section 3070 (a) as it existed at the time that section was enacted. Therefore, it is contended that the prohibitions to be found in Section 3072 only apply to alcohol denatured upon application of a "registered distillery", and it is reasoned that these sections therefore are inapplicable herein because it is recognized here that the specially denatured alcohol allegedly used by these defendants in the manufacture of Watkins' liniment was not denatured by "registered distilleries." The term "registered distillery" is defined by the regulations as "a distillery established or operated under the regulations governing the production of distilled spirits, other than alcohol produced pursuant to these regulations." Regulations 3, 182.6(x) (1942 ed.), 26 C. F.R. § 182.6(x). It quite clearly appears that the regulations have distinguished "registered distillery" from distilleries which Congress authorized to produce alcohol solely for denaturation. For ex-

ample, the new type of distilling establishment authorized by the 1907 Act was, by regulation, called an "industrial distillery"; likewise, by the 1913 Act, Congress authorized two other and distinctive distilling establishments which, according to the regulations issued pursuant thereto (Regulations No. 30, Article 109), were to be designated as a "Registered Industrial Distillery" or a "Central Distilling and Denaturing Industrial Distillery"; and the National Prohibition Act established the "registered industrial alcohol plant." The denatured alcohol allegedly used in the liniment referred to in the indictment, it seems conceded by the Government, could only have been denatured by a proprietor of a "registered industrial alcohol plant" and not by a "registered distillery." (Regulations 3, 182.11, (1942 ed.), 26 C.F.R. § 182.11, provides that only proprietors of industrial alcohol plants can denature alcohol). However, while the term "registered distillery" may have acquired a special and limited meaning in the regulations promulgated after the 1906 Act, it seems reasonably clear that the term had no such limited meaning as it was used in the 1906 Act, but merely referred to all alcohol producing establishments operating with government approval. The legislative history discloses that the term "registered distillery" was inserted in the 1906 Act to insure to any lawfully operating distillery the right to denature alcohol. 40 Cong.Rec. 7342–7343. Hence, although it may be conceded that the term "registered distillery" now probably has acquired the status of a word of art in the regulations, the spirit in which the term was used in the 1906 Act indicates that the intention was that distilleries which could produce alcohol could denature it and that all denatured alcohol was subject to the restrictions and limitations imposed by the 1906 Act. When the National Prohibition Act, Title III, authorized a new type of establishment to be a producer and denaturer of alcohol, it also adopted existing law regulating the tax-free uses of

denatured alcohol. § 3108(a). From this it seems reasonable to conclude that it was the intention of the National Prohibition Act to subject the use of all denatured alcohol produced under that Act to the controls set up under the 1906 Act which controls then applied to all alcohol denatured by lawfully operating distilleries. In view of the manifest intention that alcohol produced and denatured under the National Prohibition Act was to be subjected to existing controls and the consistent administrative construction and interpretation promulgated by the Commissioner since the adoption of the National Prohibition Act, one should not be so unrealistic as to assume that the application of the system of controls set up under the 1906 Act was to be limited to anything less than to all establishments authorized to engage in the distillation and denaturation of alcohol— as was the original purpose of § 3070(a).

Section 3102, Title 26 U.S.C.A., which was Section 10 of Title III of the Prohibition Act, provides that alcohol shall be denatured so as to be unfit for use as an intoxicating beverage. There are no prohibitions against the use of denatured alcohol for medicinal purposes in that Act. It is contended, therefore, that the authorized and lawful tax-free uses of denatured alcohol under the 1906 Act and the National Prohibition Act were in direct conflict. But, as noted heretofore, the National Prohibition Act was concerned primarily with the prohibition of the uses of alcohol for beverage purposes. The reference in the Act to "lawful tax-free" uses and "withdrawn tax free as provided by existing law" would indicate that there was no intention by the framers of that Act to provide an exclusive scheme of controls regulating the lawful tax free use of denatured alcohol. This view is entirely consonant with and finds support from Section 4(a) of Title II of the National Prohibition Act which provided that "articles enumerated in this section shall not, after having been manufactured and prepared for the market, be subject to the provisions of this act if they corres-

pond with the following descriptions and limitations, namely: (a) Denatured alcohol or denatured rum produced and used as provided by laws and regulations now or hereafter in force." 27 U.S.C.A. § 13. The subsequent sub-sections of this section granted exemption to certain products in which alcohol "unfit for use for beverage purposes" might be used. Defendants contend that Section 4(a) merely purported to permit the use after the passage of the Act of alcohol previously denatured if the alcohol was not used for beverage purposes. However, it would seem that the phrase "produced and used as provided by laws and regulations now or hereafter in force" fairly indicates that Congress intended to continue the 1906 Act in effect.

■■■ The indictment states in Count I that the conspiracy to defraud involved Regulation 182.864 (1942 Ed.). This regulation provides, so far as it is material here, "Medicinal preparations and flavoring extracts used for internal purposes may not be manufactured with specially denatured alcohol where any of the alcohol remains in the finished product * * *." First, it may be noted that the regulation was not promulgated until 1942, whereas it is alleged that the conspiracy began in 1928. But the fact that the conspiracy in its existence embraced the violation of various statutes or regulations, some of which were not in existence at the inception of the conspiracy, does not render the indictment fatally defective. The crime charged here is one of conspiracy and such a crime may have many diverse objects. The statute allegedly violated is the conspiracy statute, and the allegation in a conspiracy count that its objects were to violate several statutes or to achieve several unlawful purposes is not duplicitous. Defendants challenge the authority for the issuance of such a regulation and contend that if it be assumed that Sections 3070(a) and 3072 make it illegal to use denatured alcohol for beverage and medicinal purposes, then this regulation modifies Section 3070(a) because the regulation by forbidding the

use of denatured alcohol in medicinal preparations for internal use impliedly authorizes its use in medicinal preparations for external purposes, whereas Section 3070(a) requires that alcohol be denatured so as to be unfit for use in all liquid medicinal preparations. However, the Commissioner's apparent deviation from the strict interpretation of Section 3070(a) cannot avail defendants in challenging the validity of the regulation in question. The long-standing distinction in the Commissioner's position in allowing denatured alcohol to be used tax free in medicinal preparations for external use and consistently adhering to the ruling that Section 3070(a) prohibits its use for internal purposes has existed since 1916. The hearings before the Judiciary Committee on H.R. 5033, 67th Congress, 1921, at pp. 80, 81, 82, 160 and 161, reflect that such rulings of the Commissioner were called to the attention of Congress, and it may be noted that Congressman Volstead complained that the Commissioner should not have allowed denatured alcohol to be used tax free for external use. P. 262. It is fair to assume, therefore, that Congress possessed knowledge of these administrative rulings and the Commissioner's construction of Sections 3070(a) and 3072 as to the use of denatured alcohol in medicinal preparations when the Internal Revenue Code was adopted in 1939. That Congress enacted these sections as integral parts of the comprehensive Internal Revenue Code, while assumingly aware of the practical construction which the Commissioner consistently had placed upon the sections for some twenty years, is persuasive evidence that Congress approved of and adopted Sections 3070(a) and 3072, *as construed by the Commissioner*. National Labor Relations Board v. Gullett Gin Co., 1951, 340 U.S. 361, 365–366, 71 S.Ct. 337, 95 L. Ed. 337; Great Northern Ry. Co. v. United States, 1942, 315 U.S. 262, 277, 62 S.Ct. 529, 86 L.Ed. 836; Merchants Bank Bldg. Co. v. Helvering, 8 Cir., 1936, 84 F.2d 478, 481–82; 82 C.J.S., Statutes, § 370(2).

Defendants also contend that the indictment in Count I does not allege facts which constitute a violation of Regulation 182.864 because this regulation forbids the manufacture of medicinal preparations for internal use from denatured alcohol, while the conspiracy-to-defraud count limits the agreement to a plan and scheme to sell such medicines in violation of law. However, on a motion to dismiss, this Court should not strike this regulation from the indictment. The indictment does recite that the liniment which the defendants conspired to sell was manufactured for internal use. To the extent, if any, that the alleged illegal conspiracy embraced the regulation in question is a matter which must be left to the proof. It may be noted here that Regulation 182.864 may also be sustained under Section 3105(a), which provides, in part,

"The Commissioner shall from time to time issue regulations respecting the establishment, bonding, and operations of industrial plants, denaturing plants, and bonded warehouses authorized herein, and the distribution, sale, export, and use of alcohol which may be necessary, advisable, or proper, to secure the revenue, to prevent diversion of the alcohol to illegal uses * * *."

The attack made by defendants on the inclusion of Section 3111 of Title 26 U. S.C.A., as well as the other sections of the statutes referred to, does not require any extended comment. Section 3111 subjects alcohol used in violation of any regulation to the tax imposed under 26 U.S.C.A. § 2800(a)(1). Section 3111 was upheld against the contention that it is unconstitutional as a delegation of the taxing power by virtue of the provision therein imposing a tax for violation of laws or regulations now or hereafter in force. United States v. Rosenzweig, D.C.Pa., 1939, 25 F.Supp. 811. Section 3116, Title 26 U.S.C.A., states that it shall be unlawful to possess any liquor intended for use in violation of the revenue laws and their regulations. It has been determined that a

violation of this section is a criminal offense. United States v. Harvin, D.C. Va., 1950, 91 F.Supp. 249; Godette v. United States, 4 Cir., 1952, 199 F.2d 331.

Perhaps the most troublesome and difficult question presented on defendants' motion to dismiss is whether Section 3072 forbids the use of denatured alcohol in liquid medicinal preparations; that is, it may be forcibly urged that Section 3070(a) in providing that the denaturing of alcohol should destroy its character as a beverage and which would render it unfit for liquid medicinal purposes contemplates that there would be no problem with the diversion of denatured alcohol for such uses, and therefore Congress was primarily intent on curbing the diversion of undenatured alcohol released free from tax for denaturing purposes in beverage and liquid medicinal channels, and to prohibit the redistillation of denatured alcohol into similar unlawful uses. If alcohol by denaturing was rendered unfit for liquid medicinal purposes, the denaturing itself, it is argued, would be a sufficient guarantee that such alcohol would not be unlawfully used for such purposes, and defendants, with a great deal of earnestness contend that it must be apparent that when the 1906 Act was passed, Congress was concerned primarily that the Government should not be defrauded of its just taxes on undenatured alcohol by its secretion and removal before denaturing or its redistillation after denaturing and thereafter diverted for the enumerated unlawful purposes. Therefore, it is contended by the defendants that in the prohibitions against the use of alcohol in Section 3072 for beverage or liquid medicinal purposes, Congress was referring to undenatured alcohol and not denatured alcohol. Defendants' interpretation of Section 3072, at least from a casual consideration, may seem sound. But upon a more careful analysis of the language used and its administrative interpretation for these many years, the Court is constrained to conclude that the

Government's construction of the section is the one that should be adopted. It seems evident from a reading of this statute, which was the first relaxation of the Government as to the use of denatured alcohol tax free in the arts and industries, that Congress was concerned in restricting the use of denatured alcohol for beverage or medicinal purposes. Apparently, the legislators concluded that such purposes were to be in part achieved by a process of denaturing which would destroy the alcohol's character as a beverage and render it unfit for liquid medicinal purposes. But it seems also reasonable to conclude that Congress never intended that any type of alcohol, either undenatured or denatured, released from bond tax free, should under Section 3070(a) be diverted to unlawful use, to wit, beverage purposes or medicinal purposes. One must assume that Congress was well aware that depraved persons might use denatured alcohol for beverage purposes especially if the absence of a tax rendered it available at a much lower price than undenatured tax-paid alcohol. Under these sections, Congress provided in Section 3070(a) that alcohol is under bond from its inception; that it may be withdrawn from storage *tax free* for denaturation, although remaining under bond throughout such withdrawal ("withdrawal" meaning movement or transportation); that it is denatured while it continues to remain *under bond;* and that it is not withdrawn from such bond tax free until it has been denatured. It is not to be assumed that Congress used the terms "withdrawn tax free" and "withdrawn from bond" interchangeably. These terms were used with precision and for the evident purpose of making it clear when Congress was referring to denatured alcohol or to undenatured alcohol. It should be observed that the first clause of Section 3072 prohibits the concealment or removal of alcohol for the purpose of preventing its denaturation, which alcohol is withdrawn "free of tax". The second and third clauses of 3072 prohibit the

use of alcohol "withdrawn from bond" in the manufacture or sale of beverages or liquid medicinal preparations. It seems persuasive, therefore, as the Government contends, that Congress in using the term "alcohol" in these two clauses referred to denatured alcohol. If Congress intended to refer to undenatured alcohol, then impliedly one could dispose of such alcohol for any purpose other than beverage or liquid medicinal purposes without violating Section 3072 and thus divert alcohol into channels which would be fertile for persons inclined to defraud the Government of its contemplated revenue. Under all the circumstances, the Court concludes that Section 3072 was directed to the closing of two loopholes which might be utilized in defrauding the Government, first, the unlawful diversion of alcohol withdrawn from storage free from tax for denaturation purposes and the redistillation of any denatured alcohol, and second, the manufacture and sale of denatured alcohol in whole or in part into preparations for beverage use or that which may be akin thereto, liquid medicinal purposes. True, the statute is not couched in language which renders it entirely free from the interpretation urged by the defendants. But this Court does not feel free to depart from the long administrative interpretation of this section, and due weight should be given to the pronouncements of the Internal Revenue Department wherein it has consistently stated that these two statutes are the foundation for its rulings that tax free denatured alcohol cannot be manufactured and sold for beverage or internal liquid medicinal preparations. And to this long consistent administrative interpretation, Congress apparently has acquiesced by the enactment of the Internal Revenue Code in 1939 which included Sections 3070(a) and 3072 as an integral part of the control of tax free denatured alcohol with the apparent intent that it should not be diverted into channels where it could be used for any type of internal purposes, either beverage or medicinal.

After due and careful consideration, the Court concludes that defendants' motion to dismiss the indictment must be, and the same hereby is, in all things denied. It is so ordered. An exception is allowed.