William Alfred RENO, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19673.

United States Court of Appeals Fifth Circuit.

May 17, 1963.

Rehearing Denied June 20, 1963.

Bootle, District Judge, dissented.

---

**500**

Richard R. Booth, Miami, Fla., for appellant.

Alfred E. Sapp, Asst. U. S. Atty., Miami, Fla., Edith House, U. S. Atty. Southern District of Florida, for appellee.

Before RIVES and WISDOM, Circuit Judges, and BOOTLE, District Judge.

RIVES, Circuit Judge.

This appeal is from a judgment finding the defendant guilty "of the offense of knowingly and willfully conspiring to harbour and conceal an alien not lawfully entitled to enter or reside within the United States, well knowing and having reasonable grounds to believe that the entry of said alien into the United States occurred less than three years prior to May 4, 1961; in violation of Title 18, United States Code, Section 371, as charged in the Indictment."

The only questions presented concern the sufficiency of the indictment, as stated in the appellant's brief:

"1. Should the trial judge have dismissed the indictment on February 15, 1962, upon the motion of the appellant made February 13, 1962?

"2. Does the indictment charge an offense against the United States?"

The indictment contains a single count which commences as follows:

"The Grand Jury charges:

"That on or about May 4, 1961, and continuing to on or about the date of this Indictment, in Dade County, in the Southern District of Florida,

WILLIAM ALFRED RENO,
ROBERT EUGENE MOORE,
PHILIP BELLA and
MARIE BELLA RUTIGLIANO,

defendants herein, did willfully, feloniously and knowingly conspire, combine,

confederate and agree together and with ANGELO NICOSIA, co-conspirator but not defendant named herein, and with divers other persons to the Grand Jury unknown, to commit an offense against the United States, to-wit: to violate Title 8, United States Code, Section 1324, that is to say, they did knowingly and willfully conceal, harbor and shield from detection, and did knowingly and willfully attempt to conceal, harbor and shield from detection, in Dade County within the Southern District of Florida, including various buildings and means of transportation therein, EMANUELE NICOSIA, an alien not lawfully entitled to enter or reside within the United States, well knowing and having reasonable grounds to believe that the entry of the said EMANUELE NICOSIA into the United States occurred less than three years prior thereto and they did transport and move, and did attempt to transport and move within the United States by means of transportation or otherwise, the said EMANUELE NICOSIA; in violation of Title 18, United States Code, Section 371.

"That in furtherance of the aforesaid conspiracy and for the purpose and object of effecting the said conspiracy, the following overt acts were committed: * * *."

There follow seven separately numbered charges of overt acts.

Upon arraignment on November 9, 1961, the defendant entered a plea of not guilty. The attorney then representing the defendant was permitted to withdraw from the case on February 9, 1962. On February 13, 1962, other counsel appeared and moved to dismiss the indictment on the following grounds:

"1. Indictment does not charge an offense against the United States.

"2. Indictment is duplicitous, that is to say, it charges three separate crimes in the same count.

"3. Indictment is vague and ambiguous."

The trial commenced two days later, at which time the court denied the motion to dismiss after the following colloquy:

"MR. BOOTH (Attorney for Defendant): * * * I have filed a motion to dismiss and I don't believe the indictment is good. It is duplicitous. It charges three separate crimes in the same count.

"THE COURT: Duplicity is not a fatal defect. He may have to elect, but I think it is really protected if he charges three separate crimes because he cannot reindict him on it.

"Let me look at it for a moment, Mr. Booth.

"MR. BOOTH: It is 12,334.

"MR. SAPP (Assistant U. S. Attorney): There is one count there, your Honor. We are proceeding on the conspiracy theory that might, by some stretch of the imagination, be considered to be duplicitous. But I think those acts can be regarded as the overt acts.

"THE COURT: The overt acts have nothing to do with it, Counsel.

"MR. BOOTH: Your Honor, in the body of the opening paragraph it says first that they 'conspired.'

"And then to violate Title 8, Section 1324, that is to say, 'They did knowingly and willfully conceal, harbor or shield,' et cetera.

"And then down further it says that, 'They did transport and move,' which is charging the substantive crime. Properly worded it would have said, 'That is to say, to knowingly and willfully conceal—'

"THE COURT: Yes. The language is bad. Did you write this language?

"MR. SAPP: No.

"MR. BOOTH: No, he didn't.

"MR. SAPP: That was before my time. I have some authority that I would be glad to submit to the Court that I think hold the indictment is good, notwithstanding it

could have been more properly drawn.

"Of course, the motion here comes too late. Thirty days was allowed to file motions, and that has long since expired.

"MR. BOOTH: What was the date of the arraignment on this?

"MR. SAPP: November.

"MR. BOOTH: November. Well, the reason I filed it was because—

"THE COURT: Yes, I can see your reason. If you had filed it promptly, I would probably have dismissed it.

"MR. BOOTH: I filed it the same day I entered my appearance.

"THE COURT: Of course, my objection to it is entirely different. My objection is that the English is incorrect.

" 'That they conspired to commit an offense, that is to say, they did knowingly and willfully conceal—'

"MR. BOOTH: It makes it vague and ambiguous.

"THE COURT: Well, we understand it, but what it should have said was, 'They conspired to commit an offense, to-wit, that they would knowingly and willfully—' and so forth.

"MR. SAPP: Instead of that they actually did do it.

"THE COURT: That is right. For that reason I probably would have taken a dim view of it. But I will deny the motion at this time."

The trial was limited strictly to the conspiracy charge. The United States Attorney began his opening statement to the jury as follows:

"As the Court explained to you in the beginning, this is a conspiracy case where the Government is charging these two men, Mr. Reno and Mr. Moore, with a conspiracy to violate the Immigration Laws; that is a conspiracy to harbor and transport an alien, the alien in this case being an Italian seaman named Emanuele Nicosia, who came into this country aboard a ship, as our evidence will show, in July of 1960."

The same limitation was repeated several times in the court's charge to the jury, culminating as follows: "Now, finally keep in mind this is a case charging conspiracy as I said, an agreement between two or more persons to violate the law in the respects as the indictment charges, and there is no other charge involved—just plain conspiracy."

■ If it be assumed arguendo that the indictment is duplicitous, the district court was correct in observing that, "Duplicity is not a fatal defect." As said in United States v. Goodman, 5 Cir., 1960, 285 F.2d 378, 380: "This error would, however, be harmless if the United States were required to elect upon which charge it would proceed. The entire count should not be dismissed when a less drastic ruling will suffice." The trial was limited to the charge of conspiracy and any possible duplicity of the indictment was harmless.

■ In our opinion, however, the indictment is not duplicitous. The charge of commission of the substantive offense does not detract from the conspiracy— " * * * it is punishable as conspiracy, though the intended crime be accomplished." United States v. Rabinowich, 1915, 238 U.S. 78, 86, 35 S.Ct. 682, 684, 59 L.Ed. 1211. See also Pinkerton v. United States, 1946, 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489. As said in Heike v. United States, 1913, 227 U.S. 131, 144, 33 S.Ct. 226, 229, 57 L.Ed. 450, "At all events the liability for conspiracy is not taken away by its success—that is, by the accomplishment of the substantive offence at which the conspiracy aims."

Several cases discussing similarly worded conspiracy indictments have held that the allegation of acts which would amount to commission of the substantive offense was merely descriptive of the conspiracy. United States v. Illinois Alcohol Co., 2 Cir., 1930, 45 F.2d 145, 148; Blum v. United States, 6 Cir., 1931, 46 F.2d 850, 851; United States v. McKie-

ghan, E.D.Mich., 1932, 58 F.2d 298, 302; United States v. J. R. Watkins Co., D.C. Minn., 1954, 120 F.Supp. 154, 157. See also Millard v. United States, 5 Cir., 1945, 148 F.2d 154, 155, 156; Braswell v. United States, 5 Cir., 1952, 200 F.2d 597, 599; Beauchamp v. United States, 6 Cir., 1946, 154 F.2d 413, 415.

■ The appellant argues also that the indictment is so vague and ambiguous as to make it impossible to determine the meaning of a verdict of guilty, as expressed in appellant's brief: "That is, by its verdict did the jury mean to say that they had found the defendant guilty of the crime of conspiracy or did the jury find him guilty of concealing or transporting an alien not duly admitted."

We do not agree. The indictment clearly charges a conspiracy alone, and was expressly limited to that charge throughout the trial and by the court's instructions to the jury.

On question 2, the basis of appellant's argument that the indictment does not charge an offense against the United States is summarized in his brief as follows:

"The appellant urges that inasmuch as the object of the alleged conspiracy was the commission of substantive crimes, to wit: concealment, harboring, shielding and transporting of an alien not entitled to enter or reside in the United States, the agreement of two or more persons is necessary for the completion of the substantive crime and no conspiracy may be charged. In short, a charge that the defendants concealed, harbored and transported the alien requires a concert of action on the part of the illegal alien and the named defendants. The completion of the substantive charges depends not only upon the agreement to conceal, etc., but also on the consummation thereof. Consequently, there must be a plurality of criminal action between the alien and the named defendants to complete the substantive offenses. There is no ingredient in the conspiracy which is not present in the completed crimes. There could be no crime without this concert of action on the part of the alien and the co-conspirators named in the indictment."

■ The appellant relies on the principle stated in Pinkerton v. United States, 1946, 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489:

"* * * There are, of course, instances where a conspiracy charge may not be added to the substantive charge. One is where the agreement of two persons is necessary for the completion of the substantive crime and there is no ingredient in the conspiracy which is not present in the completed crime. See United States v. Katz, 271 U.S. 354, 355–356 [46 S.Ct. 513, 70 L.Ed. 986]; Gebardi v. United States, 287 U.S. 112, 121–122 [53 S.Ct. 35, 77 L.Ed. 206]."

See also, United States v. Holte, 1915, 236 U.S. 140, 145, 35 S.Ct. 271, 59 L.Ed. 504; Lott v. United States, 5 Cir., 1955, 218 F.2d 675, 677; Pifer v. United States, 4 Cir., 1957, 245 F.2d 704, 705; 11 Am. Jur., Conspiracy, Sec. 20; Annotations 11 A.L.R. 196, 104 A.L.R. 1430.

■ There are at least two sufficient answers to appellant's argument on question 2. First, the alien would not be guilty under the substantive statute, Title 8, United States Code, Sec. 1324, of harboring himself—his action consists of being harbored. Compare May v. United States, 84 U.S.App.D.C. 233, 1949, 175 F.2d 994, 1002, 1003. Second, while only two persons are necessary for the completion of the substantive crime, the indictment charges a conspiracy between four defendants, one Angelo Nicosia who is not made a defendant, and divers other persons to the Grand Jury unknown. See Old Monastery Co. v. United States, 4 Cir., 1945, 147 F.2d 905, 907, 908; Pifer v. United States, supra. There is thus an ingredient in the conspiracy not present in the completed crime; i. e., the participation of at least one of the defendant's co-conspirators in addition to

the participation of the alien. See Pinkerton v. United States, supra.

In Hamner v. United States, 5 Cir., 1943, 134 F.2d 592, Judges Sibley, Holmes and McCord sitting, Judge Sibley speaking for the Court, with Judge McCord dissenting, said:

> " * * * we do not think the indictment with sufficient clearness charges a conspiring. Confused allegations of what the defendants did are by a sort of inference sought to be made allegations of what they conspired to do, as respects sales of tires without rationing certificates. * * * In the present case it is alleged generally that the defendants conspired to commit offenses and frauds, but it is not alleged what offenses and frauds were agreed to be committed. The pleader thenceforth alleges only what was done." 134 F.2d at 594, 595.

In dissenting, Judge McCord quoted from United States v. Behrman, 258 U.S. 280, 288, 42 S.Ct. 303, 304, 66 L.Ed. 619. as follows:

> " 'It is enough to sustain an indictment that the offense be described with sufficient clearness to show a violation of law, and to enable the accused to know the nature and cause of the accusation and to plead the judgment, if one be rendered, in bar of further prosecution for the same offense.' " 134 F.2d at 597.

The indictment in the present case is much clearer than that in Hamner, supra. The present indictment specifically identifies the offense which the defendants conspired and agreed to commit, that is, "to violate Title 8, United States Code, Section 1324." See Wong Tai v. United States, 1927, 273 U.S. 77, 81, 47 S.Ct. 300, 71 L.Ed. 545. It then alleges that the defendants did knowingly and willfully conceal, harbor and shield from detection Emanuele Nicosia, an alien, etc. Hamner charged the purchases and sales of rubber tires without rationing certificates, which acts might possibly have been committed by the defendants separately. The present indictment charges that "they did knowingly and willfully conceal, harbor, etc.," thus charging a joint act on the part of the defendants. Further, as is argued by the appellant on the contention just considered, the commission of the offense included an agreement between the persons harboring and the one being harbored.

If, however, this case cannot be validly distinguished from Hamner, then we think that Hamner is no longer good law. The principle espoused by Judge McCord in his dissenting opinion in Hamner was again advocated by the writer in his dissent in United States v. Debrow, 5 Cir., 1953, 203 F.2d 699, at 703, 704, and was ultimately sustained by the Supreme Court on certiorari from that decision:

> "An indictment is required to set forth the elements of the offense sought to be charged.

> " 'The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." Cochran and Sayre v. United States, 157 U.S. 286, 290, [15 S.Ct. 628, 39 L.Ed. 704]; Rosen v. United States, 161 U.S. 29, 34, [16 S.Ct. 434, 40 L.Ed. 606].' Hagner v. United States, 285 U.S. 427, 431, [52 S.Ct. 417, 76 L.Ed. 861]."

> "The Federal Rules of Criminal Procedure were designed to eliminate technicalities in criminal pleading and are to be construed to secure simplicity in procedure. Rule 2, F.R. Crim.Proc. Rule 7(c) provides in pertinent part as follows:

" 'The indictment \* \* \* shall be a plain, concise and definite written statement of the essential facts constituting the offense charged \* \* \*. It need not contain \* \* \* any other matter not necessary to such statement \* \* \*.'

"The essential elements of the crime of perjury as defined in 18 U.S. C. § 1621 are (1) an oath authorized by a law of the United States, (2) taken before a competent tribunal, officer or person, and (3) a false statement wilfully made as to facts material to the hearing." 346 U.S. 374, 376, 74 S.Ct. 113, 115, 98 L.Ed. 92.

Again in Smith v. United States, 1959, 360 U.S. 1, 9, 79 S.Ct. 991, 996–997, 3 L.Ed.2d 1041, it was said:

"This Court has, in recent years, upheld many convictions in the face of questions concerning the sufficiency of the charging papers. Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused. E. g., Hagner v. United States, 285 U.S. 427 [52 S.Ct. 417, 76 L.Ed. 861]; Williams v. United States, 341 U.S. 97 [71 S.Ct. 576, 95 L.Ed. 774]; United States v. Debrow, 346 U.S. 374 [74 S.Ct. 113, 98 L.Ed. 92]. This has been a salutary development in the criminal law."

Quoted in Russell v. United States, 1962, 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed. 2d 240.

■ The essential elements of the crime of conspiracy are well stated by then Associate Justice Vinson of the D.C.Circuit in United States v. Offutt, 75 U.S.App.D.C. 344, 127 F.2d 336, 338:

"Thus there are three essentials in a conspiracy indictment: the agreement, the offense-object toward which the agreement is directed, and an overt act. The agreement is the conspiring when it is to commit an offense against the United States. The offense-object need not be com-mitted, for the crime is the agreement to do it. In that sense the crime of conspiracy is analogous to the offenses of 'attempt.' But if the offense-object is committed, the crime of conspiracy does not vanish or merge. The statutory crime differs from common-law conspiracy in that it requires an overt act. That is made an essential to give the conspirators a time, a place, and a chance to say that although we did agree, now that we are about to start, let's call it off. It also makes the indictment for, and the proof of, the illegal meeting of the minds more objective."

The present indictment states the essential facts constituting all three elements of the conspiracy charged: it alleges the agreement to commit the particular specified offense, it alleges expressly, we think but if not, then by necessary implication, that the defendants did knowingly, willfully, *and jointly* actually commit the offense so agreed on, and it alleges the overt acts. That was enough to apprise the defendant with certainty of what he must be prepared to meet and to put him in position to plead double jeopardy to any subsequent charge of the same offense.

No error appearing, the judgment is Affirmed.

BOOTLE, District Judge (dissenting).

With deep deference I must dissent. I think the indictment failed with sufficient clearness to charge a conspiracy and since the defendant was tried, convicted and sentenced for conspiracy his conviction should not stand.

Stripped of language not here pertinent, the conspiracy statute reads: "If two or more persons conspire \* \* \* to commit any offense against the United States \* \* \* and one or more of such persons do any act to effect the object of the conspiracy \* \* \*." 18 U.S.C. 371.

Similarly stripped the indictment charges that the defendants "did \* \* \*

conspire * * * to commit an offense against the United States, to-wit; to violate Title 8, United States Code, section 1324, that is to say, they did knowingly and wilfully conceal, harbor and shield from detection * * * in Dade County, within the Southern District of Florida (the named alien) * * * and they did transport and move * * * within the United States by means of transportation or otherwise (the said alien); in violation of Title 18, United States Code, section 371." Then follow in usual fashion allegations of seven overt acts.

We may be sure that all that portion of the indictment which precedes the videlicet or scilicet, "that is to say" amounts to no more than the statement of a legal conclusion. (United States v. Straus, 283 F.2d 155, 158 n. 6, (5 Cir., 1960)), and is, of course, insufficient to charge any offense. Furthermore we normally look to what comes after the videlicet or scilicet to see precisely what the writer, here the draftsman of the indictment, here also the Grand Jury, has in mind. "The use of the *videlicet* is to point out, particularize, or render more specific that which has been previously stated in general language only; also to explain that which is doubtful or obscure" Black, Law Dictionary (4th ed. 1951). "A general expression in an indictment may be restricted and confined to a precise and definite fact by a description under a videlicet or scilicet" Beauchamp v. United States, 154 F.2d 413, 415 (6 Cir., 1946). We may be sure also that what comes after the "that is to say" does not even point toward a conspiracy, much less allege one, but charges only or at most substantive offenses.

It is basic that the allegations of overt acts cannot be looked to for aid in the charging of a conspiracy. United States v. Britton, 108 U.S. 199, 2 S.Ct. 531, 27 L.Ed. 698, Joplin Mercantile Company v. United States, 236 U.S. 531, 35 S.Ct. 291, 59 L.Ed. 705, Hamner v. United States, 134 F.2d 592, 595, (5 Cir., 1943).

"[T]here are three essentials in a conspiracy indictment: the agreement, the offense-object toward which the agreement is directed, and an overt act. The agreement is conspiring when it is to commit an offense against the United States." United States v. Offutt, 75 U.S.App.D.C. 344, 127 F.2d 336, 338. In the case at bar neither the agreement nor the offense-objects, as such, are with sufficient clearness alleged.

"There is a uniformity in the decisions to the effect that in charging a conspiracy the indictment must distinctly and directly allege an agreement to commit an offense against the United States and inference and implication will not suffice." United States v. Mathies, 203 F.Supp. 797, 801 (W.D.Penn.1962). "The general rule in reference to an indictment is that all the material facts (Fed.R.Crim.P. 7(c) says "essential facts") and circumstances embraced in the definition of the offence must be stated, and that, if any essential element of the crime is omitted, such omission cannot be supplied by intendment or implication. The charge must be made directly and not inferentially or by way of recital." Pettibone v. United States, 148 U.S. 197, 202, 13 S.Ct. 542, 545, 37 L.Ed. 419, 422.

The decision of this court in Hamner v. United States, supra, written by Judge Sibley in 1943 would seem to lay this question at rest. There the indictment charged that three defendants "did * * conspire together * * * to commit offenses against and to defraud the United States in the following manner: from and since the 1st of March, 1942, the said defendants have attempted to make many purchases of new rubber tires and tubes for the purpose of and with the intent of enabling the defendants to make sales and transfers thereof to consumers and other persons without receiving certificates from local tire rationing boards; and said defendants did make sales and transfers to consumers in violation of the statutes, orders and regulations hereinbefore referred to. And the Grand Jurors further charge that in the acquisition of said new tires and tubes said defendants made and caused to be made false, fraudulent and fictitious bills, receipts and

vouchers relating to matters within the jurisdiction of the Office of Price Administration, being an agency of the United States." Then follow the usual type allegations of overt acts. Of this indictment Judge Sibley, for this court, wrote:

"We * * * do not think the indictment with sufficient clearness charges a conspiring. Confused allegations of what the defendants did are by a sort of inference sought to be made allegations of what they conspired to do, as respects sales of tires without rationing certificates. The next sentence beginning: 'And the Grand Jurors aforesaid do further charge and present, that in the acquisition of new tires and tubes the defendants made and caused to be made false and fraudulent and fictitious bills, receipts and vouchers', takes an entirely fresh start, and charges another substantive offense rather than any sort of conspiracy. Now the gist of the charge of conspiracy is the agreement to commit an offense against or a fraud on the United States. An overt act must be done pursuant to the agreement before, under 18 U.S.C.A. § 88, the crime is complete, but its essence lies in the agreement. That agreement must be distinctly and directly alleged. Inference and implication will not, on demurrer, suffice. Aid cannot be sought in the allegations of what was done in pursuance of it. 15 C.J.S., Conspiracy, § 82; 11 Am. Jur., Conspiracy, Sect. 29; Joplin Mercantile Co. v. United States, 236 U.S. 531, 35 S.Ct. 291, 59 L.Ed. 705; United States v. Britton, 108 U.S. 199, 2 S.Ct. 531, 27 L.Ed. 698. In the present case it is alleged generally that the defendants conspired to commit offenses and frauds, but it is not alleged what offenses and frauds were agreed to be committed. The pleader thenceforth alleges only what was done. What was done is often good evidence of what was agreed to be done, but to allege such evidence is not an allowable substitute for a clear statement of the agreement which is proposed to be proven. Such pleading invites the abuse of the conspiracy statute which has often happened by stating several subtantive joint offenses and seeking conviction not only for them but for a conspiracy besides. Such a thing is legally possible, but it emphasizes the necessity for clear pleading of the conspiracy agreement as a thing to be proved separate and distinct from the substantive crimes. Count one is not such a pleading."

The indictment in the Hamner case is so similar to the indictment here questioned, the opinion of Judge Sibley is so clear and convincing and the principles of law he enunciated are so sound, so obviously correct, that we should need go no further.

The fatal flaws of this indictment could not have been cured by any bill of particulars. A bill of particulars cannot save an invalid indictment. Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240. Beitel v. United States, 306 F.2d 665, 671 (5 Cir., 1962). Any suggestion that the error of the trial court in not sustaining the motion to dismiss this indictment should be disregarded because it did not affect substantial rights, Fed.R.Crim. 52(a), would seem to be fully answered by the decision of this court in Beitel v. United States, supra, 306 F.2d at pp. 670, 671, 672. "Conviction upon a charge not made would be sheer denial of due process." De Jonge v. Oregon, 299 U.S. 353, 362, 57 S.Ct. 255, 259, 81 L.Ed. 278, 282.

I agree with the learned trial court's first impression of this indictment when he said: "The language is bad. * * * If you had filed it (motion to dismiss) promptly, I would probably have dismissed it. * * * [W]hat it should have said was, 'They conspired to commit an offense, to-wit: that they would knowingly and wilfully' and so forth. * * * For that reason I probably would have taken a dim view of it."

But I think he was in error when he added "But I will deny the motion at this time." The motion to dismiss was timely. Its ground 1 reads: "Indictment does not charge an offense against the United States." Fed.R.Crim.P. 12(b)(2) reads, in part: "Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding."

The fact that the district attorney in his opening statement and the trial court in its charge to the jury stated that the defendant was being tried for conspiracy does not alter the situation. The defendant could not be tried over his protest for a felony for which he had not been indicted. "Ever since Ex parte Bain, 121 U.S. 1 [7 S.Ct. 781, 30 L:Ed. 849,], was decided in 1887 it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." Stirone v. United States, 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252, 256. The trial court cannot materially change an indictment by jury instructions. United States v. Alaimo, 297 F.2d 604, 606 (3 Cir., 1961).

The cases of United States v. Illinois Alcohol Co. et al., 45 F.2d 145, 148 (2 Cir. 1930); Blum et al. v. United States, 46 F.2d 850, 851 (6 Cir. 1931); United States v. McKieghan et al., 58 F.2d 298, 302 (E.D.Mich.1932); United States v. J. R. Watkins Co. et al., 120 F.Supp. 154, 157 (D.Minn.1954), cited by the majority deal with indictments readily distinguishable from the indictment in the case at bar.[1] The indictment most similar to the one here under discus-

1. In United States v. Illinois Alcohol Co. et al., 45 F.2d 145 (2 Cir., 1930) there was not even a contention that the indictment failed to charge a conspiracy. The court said: "The indictment * * * charges that the appellants conspired to 'manufacture, possess, keep, barter, sell, transport, deliver, distribute, accept and receive intoxicating liquors to wit, alcohol,' which contained more than one-half of 1 per cent., fit for beverage purposes other than as authorized by the National Prohibition Act. It sufficiently charges the conspiracy * * * (145). The indictment, in one count, clearly charges a continuing conspiracy to violate the terms of the National Prohibition Act, (148)." The court's correct holding was: "If, in carrying out the (properly charged) conspiracy, the appellants committed another offense against the laws of the United States, the recitation of that offense does not make the indictment void for duplicity, nor does it affect the charge of conspiracy in the indictment (148)."

Blum et al. v. United States, 46 F. 2d 850 (6 Cir., 1931) is to the same effect as United States v. Illinois Alcohol Co., supra. The district court decision in United States v. McKieghan, 58 F.2d 298 follows the Illinois Alcohol Co. case and the Blum case, and while the opinion does not fully set forth the indictment it discloses that "The indictment, first, in somewhat general language, alleges that from about April 1, 1928, to January 20, 1932, the defendants conspired to violate the National Prohibition Act *in the respects specified.* Then, having averred in broad terms, the formation of such a continuing conspiracy, the indictment, after a comma, proceeds: 'All in the following manner, that is to say that the said defendants at the time and places aforesaid, * * * *did enter into*' the said conspiray, 'and the said defendants * * * did' do the various things which the defendants now claim are there charged as separate and distinct crimes * * * (302)." (Italics supplied.) And in United States v. J. R. Watkins, Co., 120 F.Supp. 154 (D.Minn.1954) the district court held that a conspiracy count alleging that the defendants "did commit an offense against the laws of the United States of America in violation of 18 U.S.C. § 371 *by conspiring together* to commit offenses against the United States, and also to defraud the United States, in violation of 26 U.S.C. Sec. 3072, 3115(a) and 3116, and Sec. 182.864 of Regulations 3 Industrial Alcohol (1942 Ed.) and 26 U.S.C. Sec. 2800(a) (1) and 3111, *by knowingly selling and causing to be sold* a liquid medicinal preparation for internal human use * * * *"* (Italics supplied) sufficiently alleged an agreement and that the unlawful agreement was to be carried out by the parties "by knowingly selling and causing to be sold a liquid medicinal preparation for internal human use."

sion is the indictment which this court struck down in Hamner v. United States, supra.

Granted that "The Federal Rules of Criminal Procedure were designed to eliminate technicalities in criminal pleading and are to be construed to secure simplicity in procedure. Rule 2, Fed. Rules Crim.Proc." (United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 115, 98 L.Ed. 92, 96) nevertheless Rule 7(c) "states that the indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. The point at issue here is whether the essential facts of the alleged offense are charged as required by the Rule and the decisions. The older decisions of the courts on this subject are not to be disregarded because it is believed that the rule is the expression of what the law always has been on the preparation of an indictment." United States v. Mathies, supra.

The charge that the defendants agreed "to violate Title 8, United States Code, Section 1324", aside from stating only a legal conclusion (United States v. Straus, supra), also falls far short of specifically identifying any offense-object. This is demonstrated by the fact that section 1324 proscribes at least four separate and distinct offenses.

Even if joint action were alleged, the mere alleging of joint action would not constitute charging a conspiracy. While intentional joint action may tend strongly to prove a conspiracy, it would hardly be contended that the mere allegation that a plurality of persons committed a substantive offense is tantamount to a charge that they agreed to do so. The essence of a conspiracy lies in the agreement. Furthermore, laying to one side the overt acts, which cannot aid in the charging of a conspiracy, I have much doubt that the language "they did knowingly and willfully conceal, harbor, etc.," charges any joint action. There is no charge that they acted jointly or that they aided or abetted one another. I am not convinced either that the offense of concealing an alien necessarily includes an agreement between the person harboring and the one being harbored. While the cooperation of the person being concealed might normally be expected no reason is apparent why the offense of concealment could not be committed without the consent of the alien just as the "white slave traffic act" can be violated without the woman's consent. See United States v. Holte, 236 U.S. 140, 145, 35 S.Ct. 271, 272, 59 L.Ed. 504, 506 (1915).

I fully agree that the alleged duplicity, if existent, would not be a fatal defect and that a valid conspiracy indictment would lie covering the facts of this case, that is to say that there are ingredients in the conspiracy sought to be alleged which are not present in the completed crime, but for the reasons stated above I would reverse.