**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert KIRBY and James Curtis,
Defendants-Appellants.**

Nos. 78–1489, 78–1490.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1978.
Decided Nov. 30, 1978.

CUMMINGS, Circuit Judge.

In March 1977, a 12-count indictment was returned against defendants. Count I charged a conspiracy in violation of 18 U.S.C. § 371, the general conspiracy statute, in that from January 1, 1976, to December 9, 1976, defendants agreed to commit four offenses against the United States, namely,

A. To violate the mail fraud statute (18 U.S.C. § 1341) by scheming to obtain money by false pretenses from Central Soya Company through use of the mails;[1]

B. To bribe public officials in violation of 18 U.S.C. § 201(f) by giving money to two grain inspectors licensed by the United States Department of Agriculture under the United States Warehouse Act in return for their falsely certifying the grain they inspected to be of higher quality than it actually was;

C. To make false statements in violation of 18 U.S.C. § 1001 by causing false United States Warehouse Act inspection and weight certificates to be issued; and

D. To cause two licensed grain inspectors to issue false weight and inspection certificates, in violation of 7 U.S.C. § 270.

Eight overt acts in furtherance of the alleged conspiracy were listed in Count I. Counts II through IV charged defendants with the substantive offense of violating the mail fraud statute (18 U.S.C. § 1341), and Counts V through VIII charged them with the substantive offense of making false statements in violation of 18 U.S.C. § 1001. Counts IX through XII, which charged the defendants with causing the issuance of false or fraudulent weight and inspection certificates in violation of 7 U.S.C. § 270, were dismissed by the district court.[2] A jury found defendants guilty under all of the remaining eight counts and

James H. Voyles, Jr., Indianapolis, Ind., for defendants-appellants.

Bernard L. Pylitt, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and CUMMINGS and PELL, Circuit Judges.

1. Central Soya Company is located in Indianapolis, Indiana, and is in the business of processing and merchandising soybeans, corn and wheat. It is a licensed warehouse pursuant to the United States Warehouse Act (7 U.S.C. §§ 241 et seq.). It apparently does not store grain owned by others and issue receipts for the grain for which it is the bailee, but instead purchases all of the grain it stores, either for resale or for processing.

2. Judge Steckler concluded that § 270 (note 7 infra) applied only to certificates on the basis of which warehouse receipts were to be issued (Tr. 466). He nevertheless charged the jury that causing the issuance of false or fraudulent

they received concurrent sentences of six months on each count, plus fines aggregating $2500.

## I. Sufficiency of Count I of Indictment

■ Relying on *Hamner v. United States*, 134 F.2d 592 (5th Cir. 1943), defendants first assert that Count I, the conspiracy count, is fatally defective because it "proceeded to allege substantive crimes which had been committed" (Br. 8). However, in *Reno v. United States*, 317 F.2d 499, 504 (5th Cir. 1963), certiorari denied, 375 U.S. 828, 84 S.Ct. 72, 11 L.Ed.2d 60, an indictment grammatically worded like the present one was sustained, with the court stating that if the *Reno* case "cannot be validly distinguished from *Hamner*, then we think *Hamner* is no longer good law." As noted, Count I of the present indictment charges that defendants agreed to violate three provisions of the Criminal Code and a provision of the Warehouse Act and specifies numerous overt acts committed in furtherance of the conspiracy. Although paragraphs A through D of Count I inartfully set forth what the defendants agreed to do in the past tense rather than the future tense, under the *Reno* rationale this Count I was sufficient. It contained enough to apprise the defendants with certainty what allegations they must be prepared to meet and put them in a position to plead double jeopardy to any subsequent charge of the same offense. The use of the past tense in paragraphs A–D of Count I therefore will be deemed harmless error. See Rule 7(c)(3) of the Federal Rules of Criminal Procedure.

## II. Jurisdiction over Paragraphs B–D of Count I of Indictment

Defendants next contend that apart from the alleged mail fraud violation (under 18 U.S.C. § 1341) described in paragraph A of Count I, the other objects of the conspiracy, *viz.*, the alleged violations of 18 U.S.C. § 201(f), 18 U.S.C. § 1001, and 7 U.S.C. § 270, do not constitute offenses against the United States over which the district court had jurisdiction under the facts shown in the rest of the indictment.

### (a) Bribery Charge

■ Paragraph B of Count I describing bribery in violation of 18 U.S.C. § 201(f) as one of the objects of the conspiracy is based on defendants' promising money to Kinley E. Gunder and Gary L. Byrd, both grain inspectors licensed by the United States Department of Agriculture under 7 U.S.C. § 252 and regulations thereunder (7 C.F.R. § 102.61 *et seq.*). Defendants contend that those grain inspectors were not "public officials" within the purview of 18 U.S.C. § 201(f) which proscribes bribing "any public official" for past or future official acts. It is true that the inspectors were employed by Central Soya rather than by the Government. However, Congress provided for such grain inspectors to act on behalf of the Department of Agriculture in an official capacity. See 7 U.S.C. §§ 252, 256. That is sufficient to make them "public officials" because the bribery statute defines a "public official" as a "person acting for or on behalf of * * * any department [of the United States] * * * in any official function, under or by authority of any such department * * *" (18 U.S.C. § 201(a)).[3]

Privately employed licensed grain inspectors under the United States Grain Standards Act[4] (7 U.S.C. §§ 71, 74, 79, 84–87h) and regulations thereunder have been con-

---

certificates could have been the object of a criminal conspiracy under paragraph D of Count I, even though it was clear that Central Soya never contemplated issuing warehouse receipts (Tr. 573, Instruction 7). Since we have concluded that § 270 applies to all weight and inspection certificates issued under the Act by licensed inspectors, regardless of whether or not warehouse receipts were to be based on them (see discussion in section II(c) *infra*), we need not resolve the seeming discrepancy. The

Government has not appealed the dismissal of Counts IX through XII.

3. Congress intended the term "public official" to be "broadly defined." 2 U.S.Code Cong. and Admin.News (87th Cong., 2d Sess. 1962) p. 3856.

4. The *Grain Standards Act* was passed simultaneously with the Warehouse Act and is closely related to it. Weight and inspection certificates issued under the Grain Standards Act

sidered public officials under 18 U.S.C. § 201(g). *United States v. Fleetwood,* 528 F.2d 528, 529 (5th Cir. 1976).[5] Similarly, Gunder and Byrd, licensed under the United States Warehouse Act, meet the definition of public official in 18 U.S.C. § 201(a) since they were acting "on behalf of" the Department of Agriculture by issuing the certificates required by the Warehouse Act and its implementing regulations. Therefore bribing them constitutes an offense against the United States under 18 U.S.C. § 201(f). In reaching this conclusion, we reject the defendants' principal contention, which in different guises underlies each of their objections to the jurisdiction of the district court under this indictment. The defendants insist that the Warehouse Act confers jurisdiction on the Department of Agriculture only over bailments of grain and not, as is the case here, over purchases of grain which is then stored by the purchaser in its own licensed warehouse. The argument turns on whether the term "stored" as used in the Act is the equivalent of "bailed" or is to be understood more colloquially as "held for future use."

■ The Warehouse Act empowers the Secretary of Agriculture to provide for the licensing of inspectors of "any agricultural product or products, stored or to be stored" in a licensed warehouse (7 U.S.C. § 252). These provisions of the statute are implemented by 7 C.F.R. § 102.19, which requires all storage and non-storage grain received into a licensed warehouse to be inspected, graded and weighed by a licensed inspector. Non-storage grain is defined in 7 C.F.R. § 102.2(k) as

"Grain received temporarily into a warehouse for conditioning, transferring, assembling for shipment, or lots of grain

moving through a warehouse for current merchandising or milling use, against which no receipts are issued and no storage charges assessed * * *."

The regulations thus explicitly adopt a broad, nontechnical interpretation of "stored" grain to include all grain kept in a licensed warehouse, not merely grain which is held as a bailment and for which warehouse receipts have been issued. Although the defendants correctly note that "nonstorage grain" is not defined in the statute, they do not directly attack the regulations. Judge Steckler expressly adopted a broad interpretation of "stored" which is consistent with the regulations (Tr. 383–384, 472–474). We think this is the correct reading of the statutory language.

■ Defendants insist that the purpose of the Act was to foster confidence in warehouse receipts for grain stored as a bailment in order to facilitate financing. While this clearly was an important purpose of the Act, the legislative history suggests that broader goals of protecting the agricultural commodities themselves and establishing consistent standards also motivated the Act's passage. See *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 235 n. 13, 67 S.Ct. 1146, 91 L.Ed. 1447. In any event, the statutory language does not support the narrow reading advocated by defendants.[6]

We conclude that it is immaterial that the grain delivered by defendants to Central Soya Company was sold to it rather than merely stored with it, since Central Soya's storage of the purchased grain in its own warehouse brings the Act into play. The term "warehouse" as used in the Warehouse Act includes "every building * * * in which any agricultural product is or may

may be used in lieu of certificates issued under the Warehouse Act (7 C.F.R. § 102.65).

5. *See also Harlow v. United States,* 301 F.2d 361, 370–371 (5th Cir. 1962), and *United States v. Levine,* 129 F.2d 745, 747–748 (2d Cir. 1942), for other cases applying the bribery statute to persons not within the pay of the federal government.

6. *Greater Baton Rouge Port Authority v. United States,* 287 F.2d 86 (5th Cir. 1961), rehearing denied, 293 F.2d 959, certiorari denied, 368 U.S. 985, 82 S.Ct. 600, 7 L.Ed.2d 523, does not support defendants' narrow reading of the Warehouse Act. The *Baton Rouge* case held merely that warehousing activity subject to the statute did not include stevedoring and maritime activity and had no bearing on whether warehousing included storage of one's own grain as well as grain belonging to others.

be stored" (7 U.S.C. § 242). Since the Act provides for the licensing of inspectors of "any agricultural product or products, stored or to be stored" in a licensed warehouse (7 U.S.C. § 252), such inspectors, including the defendants here, are "public officials" for purposes of 18 U.S.C. § 201.

### (b) False Statements Charge

■ Paragraph C of Count I describing false statements in violation of 18 U.S.C. § 1001 as another object of the conspiracy charges that defendants caused false and incorrect United States Warehouse Act inspection and weight certificates to be executed and issued under the Warehouse Act (7 U.S.C. §§ 241 et seq.). Counsel for defendants again argues that paragraph C does not allege an offense against the United States because the false statements were made to Central Soya, a private purchaser of grain. However, as explained above, 7 U.S.C. § 252 places the regulation of the storage of agricultural products in all licensed warehouses within the jurisdiction of the Department of Agriculture. Because this object of the conspiracy was to have Gunder and Byrd "in any matter within the jurisdiction of any department * * * of the United States" make any knowingly "false, fictitious or fraudulent statements" (18 U.S.C. § 1001), the false statement statute has been satisfied. *Ebeling v. United States,* 248 F.2d 429, 434 (8th Cir. 1957), certiorari denied, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 261; see also *Bryson v. United States,* 396 U.S. 64, 70–71, 90 S.Ct. 355, 24 L.Ed.2d 264; *United States v. Lambert,* 501 F.2d 943, 946 (5th Cir. 1974).

### (c) Issuance of False Weight and Inspection Certificates

■ Paragraph D of Count I, describing the issuance of false and fraudulent weight certificates in violation of 7 U.S.C. § 270 [7] as the fourth object of the conspiracy, is based on defendants' causing Gunder and Byrd to issue such documents. Defendants again reiterate their view that paragraph D does not charge an offense against the United States because it covers the purchase and sale of grain rather than storage. However, as already pointed out, the United States Warehouse Act does cover the Central Soya warehouse and the certification of grain stored in it. The Secretary of Agriculture is empowered to prescribe rules and regulations with respect to such certification (7 U.S.C. § 252) and defendants admit that these inspection and weight certificates were approved by the Department of Agriculture (Br. 13). The regulations provide that after the weighing and inspection of the grain, the inspector is to issue an inspection and weight certificate (7 C.F.R. §§ 102.65, 102.67, 102.68). Copies of such certificates must be kept by the inspector for one year, with another copy being filed with the warehouse (7 C.F.R. § 102.69). The regulations require the inspection of all grain coming into a licensed warehouse (7 C.F.R. §§ 102.19, 102.44). Since these regulations are authorized by the Warehouse Act (7 U.S.C. § 268), defendants' argument that paragraph D does not charge facts constituting an offense against the United States must fail.

For the foregoing reasons, we conclude that the district court correctly refused to dismiss Count I of the indictment and to deny the motions for acquittal insofar as they related to this subject matter.

### III. Multiplicious Counts

■ In their brief, defendants have submitted without amplification that Counts I,

---

7. 7 U.S.C. § 270 provides in pertinent part: "Every person who shall * * * issue or utter a false or fraudulent receipt or certificate * * * shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not more than $10,000, * * or imprisoned not more than ten years, or both, in the discretion of the court, * * * Any person who shall draw with intent to deceive, a false sample of, or who shall will- fully mutilate or falsely represent a sample drawn under this chapter, or who shall classify, grade, or weigh fraudulently, any agricultural products stored or to be stored under the provisions of this chapter, shall be deemed guilty of a misdemeanor, and upon conviction thereof fined not more than $500, or imprisoned for not more than six months, or both, in the discretion of the court."

II–IV of the indictment are multiplicious (Br. 6). However, Count I was a conspiracy count covering a period from January 1, 1976, to December 9, 1976, and would require different proof than the substantive mail fraud charges in Counts II–IV. The mere facts that Count I charges, *inter alia,* conspiracy to commit mail frauds and that two of the overt acts alleged in Count I involve fraudulent mailings do not make Count I multiplicious as to the mail fraud counts. Similarly, the three mail fraud counts involved mailings on November 4, 1976, November 10, 1976, and November 11, 1976. Because they involve different mailings, they stated separate offenses and were also not multiplicious with each other.

█ Defendants contended below that Counts IX–XII under 7 U.S.C. § 270 are multiplicious "in that they charge the same offenses" (Br. 5). On the other hand, each of those counts involved separate weight and inspection certificate numbers, thus also requiring different evidence, so that again there was no fatal multiplicity.

Although defendants' brief does not argue that false and fraudulent weight and inspection certificate Counts IX–XII are multiplicious as to false statement Counts V–VIII, the Government's brief candidly concedes that the false statement counts (V–VIII) under 18 U.S.C. § 1001 are comparable to the false and fraudulent certificate counts (IX–XII) under 7 U.S.C. § 270. In order to avoid multiplicity, the Government submits that Counts V–VIII require proof that the false statements were made "as to material facts in a matter within the jurisdiction of the Department of Agriculture" under 18 U.S.C. § 1001, while no such proof is required under 7 U.S.C. § 270 (Br. 25). We need not decide whether each of the foregoing two pairs of counts respectively states only a single offense because the district court dismissed Counts IX–XII (Tr. 466), so that the question has become moot.

### IV. *Sufficiency of Counts V–VIII*

█ Defendants claim that Counts V–VIII under 18 U.S.C. § 1001 do not charge facts constituting an offense against the United States because they do not allege "in what way the alleged false statements were material, in what way were they false, or in what way they were made in a matter within the jurisdiction of the Department of Agriculture" (Br. 12). However, an indictment need state only "the essential facts constituting the offense charged" (Rule 7(c)(1) of the Federal Rules of Criminal Procedure). These counts each alleged that defendants caused the issuance of false and incorrect inspection and weight certificates which under 7 U.S.C. §§ 244 and 252 was a matter within the jurisdiction of the Department of Agriculture. The materiality of the false statements was adequately shown because the grand jury charged that the certificates purported to show "the true and accurate inspection and grade of the grain represented thereby" while defendants knew the inspection and grade were false. What could be more material and substantial (cf. defendants' Br. 18) than to cause inspector Gunder to falsify both the "inspection and grade" on the certificates as charged in Counts V–VIII? The materiality of the false statements is self-apparent because these sophisticated defendants would know that the falsified grade, percentage of moisture, foreign material, weight and damage stated in these certificates would determine the amount paid for the grain by Central Soya Company, the storage conditions and processing to which it would be subjected and possibly the resale price (see *e. g.,* Tr. 32, 46–47). Further particularity in the indictment was unnecessary. *United States v. Satterfield,* 411 F.2d 602 (5th Cir. 1969); *United States v. Silver,* 235 F.2d 375 (2d Cir. 1956), certiorari denied, 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed.2d 80.

### V. *Defendants' Proffer of Tests Conducted on Sample Grains of Corn Was Properly Rejected*

█ Defendants' proffered evidence concerning tests conducted by their witnesses on samples of corn to show that the moisture testing and inspection procedures used by Government witness Gunder were

inexact. In rejecting the proffer, the district court stated that the defendants' reason to offer the evidence was to attack the credibility of the Government's evidence that the grain certificates were materially false. The Government's case was partly based on the testimony of Mr. Gunder, a licensed inspector at Central Soya Company, that he had intentionally falsified the certificates. The theory of the defense was that if the testing procedures were inexact, the Government would not be able to prove that the certificates materially misrepresented the quality of the grain, notwithstanding the fact that the person who issued them intended that they should do so. The court concluded that the proffered evidence "goes too far beyond the scope of relevant evidence to the issue herein involved" (Tr. 426). Gunder's testimony had related to certain Motomco moisture machines that he had used at Central Soya in 1976, whereas the defendants' proposed evidence involved tests run in 1978 by the Board of Trade and an independent grain elevator. Because of the time gap, the district court could consider that evidence as irrelevant. Even if relevant, the court could properly exclude it on the ground that its probative value might confuse the issues and mislead the jury under Rule 403 of the Federal Rules of Evidence. Since by the cross-examination of Government witnesses Gunder, Byrd, Bailey and Haggarty the defendants had been able both to attack their credibility and to show the possibility of moisture content variances, the district court did not abuse its discretion in refusing to receive this additional evidence.

## VI. *Refusal of Seven Tendered Instructions of Defendants*

 Defendants next assert that the district court should have given its proposed Instructions 24, 29, 36, 40, 42, 43 and 52. In considering this matter, the instructions must of course be viewed as a whole (*United States v. Rajewski,* 526 F.2d 149, 159 (7th Cir. 1975), certiorari denied, 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833). It is unnecessary to give a proposed charge where the essential points are covered in other instructions. *United States v. Cook,* 530 F.2d 145, 153 (7th Cir. 1976), certiorari denied, 426 U.S. 909, 96 S.Ct. 2234, 48 L.Ed.2d 835.

 Defendants' Instruction 24 told the jurors that they could not find defendants guilty under Count I unless it found they were involved in the same single conspiracy. This was sufficiently covered by Instructions 8, 9, 13–19 (Tr. 574–575, 580–587), all dealing with the elements of a conspiracy with meticulous care.

Defendants' Instruction 29 related to the weight the jurors were to give circumstantial evidence. This was adequately covered by the court's Instruction 28 (Tr. 596–597).

Defendants' proposed Instruction 36 dealt with accomplice testimony. The court's Instruction 39 was to the same effect (Tr. 597), rendering defendants' Instruction 36 surplusage. See *United States v. Marzano,* 537 F.2d 257, 274 (7th Cir. 1976); *United States v. Rajewski, supra,* 526 F.2d at 160.

Defendants' proposed Instruction 40 defined the essential elements of violating the mail fraud statute (18 U.S.C. § 1341). It was covered adequately by the court's Instructions 10, 20–24 (Tr. 575–576, 587–590).

Defendants' proposed Instruction 42 dealt with the issuance of warehouse receipts under 7 U.S.C. § 251. Since the indictment did not relate in any respect to warehouse receipts, it was unnecessary to give this instruction.

Defendants' proposed Instruction 43 would have required the district judge to read to the jury various regulations under the United States Warehouse Act, particularly with respect to their supposedly "requiring warehouse receipts in all transactions under the Warehouse Act" (Br. 22).[8] As already stated, this instruction was not

---

8. As discussed at length *supra,* this is a misstatement of the relevant law.

required because the indictment did not relate to any warehouse receipts.

Defendants' proposed Instruction 52 would have told the jury that to constitute a scheme to defraud (apparently referring to Counts II–IV with respect to mail fraud under 18 U.S.C. § 1341), the evidence must "portray beyond a reasonable doubt a systematic plan to defraud as the underlying basis of the deceit." This was covered by Instructions 21 and 22 (Tr. 588–589).

### VII. Court's Instructions 12, 18, 32 and 39 Were Permissible

■ Defendants criticize Instruction 12 because it covers only 7 U.S.C. §§ 241, 242, 244, 252, 254 and 256 and does not include other Sections of the Warehouse Act which refer to warehouse receipts. However, the evidence shows that warehouse receipts were not utilized by Central Soya in these transactions and they were not mentioned in the indictment. Consequently, it would have been misleading and confusing for the district court to refer to the statutory warehouse receipt provisions.

■ Defendants also criticize Instruction 18 because it told the jury it could find "a conspiracy under Count I of the indictment if the evidence establishes beyond a reasonable doubt a conspiracy to violate any one of the [4] statutes alleged" (Tr. 587). This instruction is correct. *United States v. Grizaffi,* 471 F.2d 69, 73 (7th Cir. 1972); *United States v. Tanner,* 471 F.2d 128, 140 (7th Cir. 1972).

■ Defendants contend that Instruction 22, defining a scheme to defraud under 18 U.S.C. § 1341, was deficient because it did not indicate "that the falsity need be substantial" (Br. 22). However, the court's instruction was taken from 2 Devitt and Blackmar, *Federal Court Practices and Instructions,* § 47.04 (3d ed. 1977), and has been approved in *United States v. Bush,* 522 F.2d 641, 651, notes 10 and 11 (7th Cir. 1975).

■ Defendants also object to court Instruction 39 dealing with accomplice testimony. Such an instruction was drawn from 1 Devitt and Blackmar, *Federal Jury Practices and Instructions,* § 17.06 (3d ed. 1977), and has been approved in *United States v. Morales,* 477 F.2d 1309, 1313 (5th Cir. 1973). Because the instruction told the jury that accomplice testimony "is to be received with caution, scrutinized closely, and weighed with great care" (Tr. 597), defendants were adequately protected.

### VIII. Constitutionality of False Statement Statute

■ Counts V–VIII charged that defendants made false statements within the meaning of 18 U.S.C. § 1001 by causing the issuance of false and incorrect grain inspection and weight certificates. Defendants' final position is that the application of 18 U.S.C. § 1001 to these facts "render[s] it unconstitutionally vague and indefinite" (Br. 23). Since the evidence shows that the subject matter of this indictment was within the jurisdiction of the Department of Agriculture and that defendants caused federally licensed grain inspector Kinley Gunder to falsify a material fact, namely, the inspection grade and weight on the certificates, 18 U.S.C. § 1001 clearly applies and cannot be deemed unconstitutional on grounds of vagueness. See *United States v. Matanky,* 482 F.2d 1319, 1322 (9th Cir. 1973), certiorari denied, 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329.

Judgments of conviction affirmed.