**UNITED STATES of America, Plaintiff,**

v.

**Pete GALLEGOS and Lee Pacheco, Defendants.**

Crim. No. 81–19.

United States District Court, D. New Mexico.

April 8, 1981.

Thomas S. Udall, Asst. U. S. Atty., Albuquerque, N. M., for the U. S.

Dennis P. Murphy, Santa Fe, N. M., for defendants.

## MEMORANDUM OPINION

BRATTON, Chief Judge.

Defendants Pete Gallegos and Lee Pacheco are building contractors operating in Las Vegas, New Mexico. They were indicted on six counts of bribing a public official to influence his conduct in administering a grant program of the Farmers Home Administration, in violation of 18 U.S.C. § 201(b)(1). They have moved to dismiss the indictment on the ground that Robert Madrid, the person they are accused of bribing, was not a "public official" within the meaning of the federal bribery statute.

Section 201(a) of Title 18, United States Code, provides:

For the purpose of this section:

"public official" means ... an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof ... in any official function, under or by authority of any such department, agency, or branch of Government

. . . .

The evidence presented at the motion hearing showed that, at the time in question, Madrid was an employee of the State of

New Mexico. He had been assigned to work in an office of the Farmers Home Administration in Las Vegas, New Mexico, to assist in administering an FHA program that provided federal grants to individual homeowners to improve rural housing. *See* 42 U.S.C. § 1474. There was testimony that the New Mexico Legislature authorized the creation of Madrid's position in order to assist New Mexico citizens in taking advantage of available federal funds. An agreement was entered into between the FHA and the state under which a state employee would be provided to the FHA for this purpose.

Madrid's duties with the FHA were to process grant applications, which he then passed on to his supervisor, and to inspect construction jobs carried on with grant money. His supervisor, who was an FHA official, had final approval authority for the grants, but the evidence showed that he disapproved no application forwarded to him with a recommendation of approval from Madrid. Processing grant applications involved helping applicants fill out the necessary forms and ascertaining that they qualified for the program. Inspection of construction work and approval by the inspector were necessary before the FHA would release funds to pay the contractor doing the job. Madrid was not involved exclusively with the federal program; if federal money was inadequate for a particular home, he could process an application for a "piggyback" grant provided by a similar state housing assistance program. He testified, however, that about 90 percent of his time was devoted to the FHA program.

It is true, as counsel point out, that some incidents of Madrid's employment connect him with the state and some with the federal government. For instance, his salary was paid by the state, the state maintained his time and vacation records, state officials assigned him to and temporarily reassigned him from his FHA work, and a state supervisor had hiring and firing power over him. On the other hand, Madrid worked in federal office space, used supplies, equipment, and vehicles provided by the federal government, and was considered a federal employee under the Federal Tort Claims Act and the Federal Employees Compensation Act.

■ For the purposes of this inquiry, however, the essential facts regarding Madrid's employment all indicate that he was a public official under § 201(a). Although he was not an employee of the federal government, he was working under the direct supervision of a federal official in the administration of a federal grant program. When he processed grant applications, he was assisting the FHA in doing so, and when he made inspections he was acting as the eyes of that federal agency. His recommendations and actions influenced or controlled the dispersal of federal funds by the FHA. His job activities were performed under the authority conferred on him by his FHA supervisor pursuant to the agreement between the state and the FHA. It must therefore be concluded that Madrid was acting "for or on behalf of ... [an agency of the United States government] ... in [an] official function, under or by authority of ... such ... agency."

Defendants rely on *United States v. Del Toro*, 513 F.2d 656 (2d Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). In *Del Toro*, the Court of Appeals for the Second Circuit held that a city employee working in the federally funded Model Cities Program was not, for that reason, a public official under § 201(a). To the extent that the Second Circuit recognized that the actual source of the employee's paycheck is not determinative, *Del Toro* is in accord with the result here. To the extent that the Second Circuit based its holding on the employee's position in the local/federal bureaucracy—his isolation from any federal supervisory officials and his attenuated influence on the ultimate expenditure of any federal funds—*Del Toro* is distinguishable from the present case. To the extent that the Second Circuit found in the federal bribery statute no intent to reach conduct that was "clearly illegal ... under state law," 513 F.2d at 662, it should be noted that here the United States, not

the State of New Mexico, is harmed by the improper influence allegedly exerted on Madrid in connection with the FHA grant program. There is no reason to think that Congress would not intend such an injury to be punishable under federal law. As the Second Circuit itself has observed, "[i]t is the corruption of official positions through misuse of influence in governmental decision-making which the bribery statutes make criminal." *United States v. Carson,* 464 F.2d 424 (2d Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219 (1972). In the present case, the defendants allegedly sought to corrupt Madrid's official position with respect to the FHA, not the state, in order to influence federal governmental decision-making. This conduct would fall within federal criminal jurisdiction.[1]

■ Defendants point out that Title 5, Section 3374 of the United States Code, pertaining to employees assigned to the federal government from state or local governments, states that:

> During the period of assignment, a State or local government employee on detail to a Federal agency . . . is deemed an employee of the agency . . . for the purpose of . . . sections 203, 205, 207, 208, 209, 602, 603, 606, 607, 643, 654, 1905, and 1913 of title 18 . . . .

5 U.S.C. § 3374(c)(2). Defendants argue that the omission of § 201 from this list indicates a congressional intent not to treat an individual in Madrid's position as a public official under that statute. No inference of negative congressional intent should be drawn from this omission. Rather, the facts should be examined in every case to determine whether § 201 is applicable.

It is therefore concluded that Madrid, the alleged target of the bribery, was a public official within the meaning of 18 U.S.C. § 201(a) and that the indictment should not be dismissed. *See also United States v. Kirby,* 587 F.2d 876 (7th Cir. 1978); *United States v. Griffin,* 401 F.Supp. 1222 (S.D.Ind.

1975), *aff'd without opinion sub nom. United States v. Metro Management Corp.,* 541 F.2d 284 (7th Cir. 1976). An order will be entered in conformity with this opinion.

---

1. The Second Circuit's holding in *Del Toro* appears to have been interpreted by another panel of that court as being based on the lack of an "employment relationship" between the bribed

employee and the federal government. *United States v. Loschiavo,* 531 F.2d 659 (2d Cir. 1976). This is an unpersuasive reading both of § 201 and of *Del Toro.*