**UNITED STATES of America**

v.

**John SAYBOLT, Appellant
in No. 07–4392.**

**Kenneth Welch, Appellant
in No. 07–4429.**

**Nos. 07–4392, 07–4429.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 28, 2009.

Filed Aug. 18, 2009.

Daniel I. Siegel, Esq. (Argued), Office of the Federal Public Defender, Wilmington, DE, for John Saybolt.

Andrew F. Erba, Esq. (Argued), Williams, Cuker & Berezofsky, Philadelphia, PA, for Kenneth Welch.

Pamela Foa (Argued), Office of the United States Attorney, Philadelphia, PA, for the United States of America.

Before: SCIRICA, Chief Judge, AMBRO, and SMITH, Circuit Judges.

## OPINION

SMITH, Circuit Judge.

Appellants John Saybolt and Kenneth Welch were convicted of crimes stemming from their participation in a conspiracy to file multiple false, fictitious, or fraudulent claims with the Internal Revenue Service ("IRS"), in violation of 18 U.S.C. §§ 286, 287, and 2. On appeal, both challenge the District Court's failure to dismiss the Indictment on the grounds that it did not allege materiality, which they argue is an essential element of both Sections 286 and 287. Welch also asserts that the District Court committed reversible error by not instructing the jury on materiality. Based on our reading of the statutory language and the relevant case law, we hold that materiality is an essential element of the charged Section 286 offense, but is not required to show a Section 287 violation. Nevertheless, we will affirm Appellants' convictions and sentences because the Indictment sufficiently alleged facts that warrant an inference of materiality, and the deficiency in the jury instructions was harmless error.[1]

### I.

On October 25, 2005, a grand jury indicted Welch and Saybolt on one count each of conspiring to defraud the United States by obtaining and aiding others to obtain the payment of false, fictitious, and fraudulent tax refunds, in violation of 18 U.S.C. § 286, and thirty-five counts each of making and presenting, and aiding and abetting the making and presenting of, false, fictitious, and fraudulent tax returns to the IRS, in violation of 18 U.S.C. §§ 287 and 2. The Indictment alleged that, from 1997 to 2003, Welch and Saybolt filed tax returns that falsely claimed refunds for 1) excess federal wage withholdings and 2) excise taxes on gasoline use in fake farming and fishing businesses. Welch and Saybolt also allegedly solicited and obtained from third parties the identification information necessary to file the returns—which included

---

1. Welch also raises seven other grounds on appeal: 1) the evidence was insufficient to sustain any of his convictions; 2) the District Court erred in refusing to instruct the jury that a Section 287 violation requires proof of an intent to defraud; 3) the Court erred in allowing a lay witness to testify about Welch's handwriting; 4) it improperly allowed a witness to offer an in-court identification of Welch; 5) it erred in enhancing Welch's Sentencing Guidelines range for his alleged role as an organizer or a leader; 6) it should not have enhanced Welch's Sentencing Guidelines range for the purported sophisticated means used to commit the crimes; and 7) it imposed an otherwise unreasonable sentence. We have carefully reviewed the record and the applicable law, and see no merit to any of these claims. Accordingly, they require no further discussion.

names, addresses, dates of birth, and social security numbers—in exchange for some or all of the proceeds from the refund checks. All tolled, Welch and Saybolt allegedly claimed about $534,476 in undeserved refunds for individuals and entities from Pennsylvania, Ohio, Massachusetts, and New York, of which the IRS paid approximately $223,052.

Before trial, Saybolt filed a motion to dismiss the Indictment for failing to charge materiality as an element of the alleged violations of Sections 286 and 287. The District Court denied Saybolt's motion, holding that following *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), and *United States v. Wells*, 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997), Sections 286 and 287 neither explicitly nor implicitly included materiality as an element of the offense. Focusing its analysis on Section 287, the Court pointed out that while *Neder* and *Wells* "conclude[d] that fraud crimes include an implied element of materiality," the statute "prohibits making a claim 'knowing such claim to be false, fictitious or fraudulent.'" The Court reasoned that the disjunctive connector gave the Government the option of charging prohibited acts that both included materiality—making or presenting fraudulent claims—and those that did not—making or presenting false and fictitious claims. Accordingly, the District Court concluded that materiality was not an essential element of either Sections 286 or 287.

On January 8, 2007, the Appellants' joint jury trial began. During the trial, the Government adduced evidence that in 1996 the Appellants met each other when they were both incarcerated in the same Pennsylvania prison. While in prison, Welch recruited other prisoners to participate in a scheme to file false tax returns. After he was released, Saybolt obtained names and identifying information from individuals by promising that he could get them money with that information. Welch then prepared the false tax returns using the information that Saybolt obtained. These returns either claimed that the individual was entitled to a refund for excess federal wage withholdings, or that the individual was a fisherman entitled to a credit for federal taxes paid on fuel used for business. When the IRS issued a refund check, Saybolt would split the proceeds into thirds: one-third to the individual providing the identifying information, one-third to Welch, and one-third for himself.

Before the end of the trial, the Court, upon the Government's motion, dismissed six of the thirty-five counts alleging violations of Sections 287 and 2 against Saybolt. The Court also denied the Appellants' request to instruct the jury that materiality was a required element of all the offenses charged.

The jury found the Appellants guilty of all remaining charges. After the jury's verdict, Welch filed a Motion for a New Trial and Motion to Arrest Judgment that, *inter alia*, joined, for the first time, in Saybolt's pretrial argument that the Indictment was insufficient in failing to allege materiality. The District Court denied Welch's motion, dismissing Welch's challenge to the Indictment for the same reasons it rejected Saybolt's.

The Court sentenced Saybolt to forty-eight months of imprisonment and three years of supervised release, and ordered him to pay a $3,000 special assessment, $1,000 fine, and $145,525 in restitution. The Court sentenced Welch to 120 months of imprisonment and 3 years of supervised release, and ordered him to pay a $3,600 special assessment and $145,525 in restitution. The Appellants filed timely appeals.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. Our review of both the sufficiency of the Indictment and the District Court's failure to instruct the jury on materiality is plenary. *United States v. Yusuf,* 536 F.3d 178, 184 (3d Cir.2008) ("The 'sufficiency of an indictment to charge an offense is a legal question subject to plenary review.'" (quoting *United States v. Conley,* 37 F.3d 970, 975 n. 9 (3d Cir.1994))); *United States v. Tupone,* 442 F.3d 145, 149 (3d Cir.2006) ("Because [the defendant's] challenge to the jury instructions turns on a matter of statutory interpretation, our review is plenary as to that issue.").

## III.

The Appellants' challenge to the sufficiency of the Indictment and Welch's jury instruction claim share one common issue: whether violations of Sections 286 and 287 always require proof of materiality. Accordingly, we begin our analysis with a review of the two statutes.

## A.

■ "[W]e first look to the text of the statutes at issue to discern whether they require a showing of materiality." *Neder v. United States,* 527 U.S. 1, 20, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). All parties agree that neither Sections 286 nor 287 explicitly mentions materiality. But "'[w]here Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.'" *Id.* at 21, 119 S.Ct. 1827 (quoting *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)). At this point in our analysis, two Supreme Court cases are of particular relevance: 1) in *Neder,* the Court held that "the common law could not have conceived of 'fraud' without proof of materiality," *id.* at 22, 119 S.Ct. 1827; and 2) in *United States v. Wells,* 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997), the Court determined that the term "false statement" did not have a settled common law meaning that required proof of materiality, *see id.* at 491, 117 S.Ct. 921; *see also Neder,* 527 U.S. at 23 n. 7, 119 S.Ct. 1827 ("[T]he term 'false statement' does not imply a materiality requirement ...." (citing *Wells,* 519 U.S. at 491, 117 S.Ct. 921)).

## B.

■ Section 287 provides:

Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

18 U.S.C. § 287. All parties agree that, following *Neder* and *Wells,* Section 287's inclusion of the term "fraudulent" suggests the incorporation of a materiality requirement. The parties disagree, however, on the extent of such an incorporation.

According to the Government, the use of the disjunctive connector "or" between the terms "false," "fictitious," and "fraudulent" compels one conclusion: proof of materiality is not always necessary to establish a Section 287 violation. We agree. "Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings unless the context dic-

tates otherwise...." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). Here, Section 287 connects the terms "false," "fictitious," and "fraudulent" with the disjunctive "or." Giving these terms separate meanings, we read Section 287 to demand a showing that the claim was known to be either "fraudulent," which would require proof of materiality, or "false" or "fictitious," which would not require proof of materiality. This means that proof of materiality is not always required to establish a Section 287 violation.

Our reading of Section 287 is consistent with the Supreme Court's interpretation of the phrase "false or fraudulent" used in other statutes. In *Neder*, the Government argued that the presence of the term "material" in some federal fraud statutes but not others indicated that materiality should not be implied where the term was absent. 527 U.S. at 23 n. 7, 119 S.Ct. 1827. Specifically, it pointed to 21 U.S.C. § 843(a)(4)(A), which "prohibit[s] the furnishing of 'false or fraudulent material information' in documents required under federal drug laws" and 26 U.S.C. § 6700(a)(2)(A), which "criminaliz[es] the making of a statement regarding investment tax benefits that an individual 'knows or has reason to kno[w] is false or fraudulent as to any material matter.'" *Id.* The Court noted that those two statutes "prohibit both 'false' and 'fraudulent' statements or information." *Id.* It then remarked that "[b]ecause the term 'false

statements' does not imply a materiality requirement ... the word 'material' limits the statutes' scope to material falsehoods." *Id.* (internal citation omitted).

The *Neder* Court's comments indicate that it read the phrase "false or fraudulent" in a way that gave the two disjunctively connected terms separate meanings. If, as the Appellants suggest, the use of the phrase "false or fraudulent" were sufficient, by itself, to always require proof of materiality, then the *Neder* Court's statement that "the word 'material' limits the statutes' scope to material falsehoods" would be nonsensical; the scope of the statutes mentioned in *Neder* already would be implicitly limited to material falsehood even without the word "material." Therefore, in *Neder*, the Court must have given the disjunctively connected terms "false" and "fraudulent" separate meanings. Such a reading is consistent with our reading of the similar "false, fictitious, or fraudulent" language found in Section 287.

The Appellants rely on legislative history to show that Section 287 always requires proof of materiality. But we "look to legislative history only if the text is ambiguous." *In re Mehta*, 310 F.3d 308, 311 (3d Cir.2002); *see also United States v. Knox*, 32 F.3d 733, 744 (3d Cir.1994) ("[I]f the statutory language is clear, it is not necessary to glean congressional intent from legislative history."). Here, we see no textual ambiguity, nor have the Appellants identified any.[2]

**2.** We acknowledge that prior to *Neder*, the courts of appeals were split on the issue of whether materiality was a required element of Section 287. *See United States v. Nash*, 175 F.3d 429, 433 (6th Cir.1999) (identifying four courts that had held that materiality was not an element of Section 287, and two courts that had held that it was). We do not believe, however, that the presence of this split indicates that textual ambiguity exists. As we explained earlier, *Neder* strongly suggested

that the phrase "false or fraudulent" should be read in the disjunctive, with only the term "fraudulent" implying a materiality requirement. *See* 527 U.S. at 23 n. 7, 119 S.Ct. 1827. This authority reinforces what is already plain—that the terms "false," "fictitious," and "fraudulent" in Section 287 should be read separately. Indeed, in the only post-*Neder* precedential opinion that we are aware of that has decided whether materiality is an essential element of Section 287,

Accordingly, resort to legislative history is inappropriate.[3]

In conclusion, Section 287's clear and unambiguous text is dispositive: because the terms "false," "fictitious," and "fraudulent" are connected with the disjunctive "or," the terms must be given separate meaning and thus, proof of materiality is not necessary to establish a violation of Section 287.

### C.

█ According to Section 286:

the Court held that it was not. *See United States v. Logan*, 250 F.3d 350, 358 (6th Cir. 2001).

3. The Appellants argue that *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), and *United States v. Thomas*, 315 F.3d 190 (3d Cir.2002), justify consideration of legislative history here. We disagree. It is true that the courts in both *McNally* and *Thomas* consulted legislative history to discern the meaning of disjunctively worded statutes. *See McNally*, 483 U.S. at 356–58, 107 S.Ct. 2875 (discussing the legislative history of the 1872 version of the federal mail fraud statute and its amendment in 1909); *Thomas*, 315 F.3d at 197 ("[W]e have plumbed the Congressional history."). Textual ambiguity, however, existed in the statutes at issue in both of those cases. *See McNally*, 483 U.S. at 359–60, 107 S.Ct. 2875 (characterizing the federal mail fraud statute as having "two rational readings"), *superseded by statute*, Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7603(a), 102 Stat. 4508 (1988) (codified at 18 U.S.C. § 1346), *as recognized in Cleveland v. United States*, 531 U.S. 12, 19–20, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000); *Thomas*, 315 F.3d at 196 (noting that "[t]his court has spoken equivocally on" whether the two subsections should be read disjunctively). Accordingly, *McNally* and *Thomas* do not compel consideration of legislative history where, as here, the statute is unambiguous.

The Appellants also claim that the analytical framework employed in *Wells* requires us to examine Section 287's legislative history. It does not. In *Wells*, the Court considered the legislative history of the statute before it

Whoever enters into any agreement, combination, or conspiracy to defraud the United States, or any department or agency thereof, by obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim, shall be fined under this title or imprisoned not more than ten years, or both.

The Appellants argue that since Section 286 expressly provides that the conspiracy must be "to defraud," proof of materiality is required to establish a Section 286 violation.[4] Clearly, Section 286 does not re-

and noted that the legislative history "confirm[ed] the natural reading." 519 U.S. at 492, 117 S.Ct. 921. But nothing in *Wells* suggests that its discussion of legislative history was an essential analytical step. To the contrary, in *Neder*, the Court employed "the framework set forth in *[Wells]*" and made no mention of legislative history. 527 U.S. at 20, 119 S.Ct. 1827. Like our approach here, the Court's analysis in *Neder* was grounded entirely in the statutory language: after quickly pointing out that the text did not expressly include materiality, the Court moved to the "necessary second step" of determining whether the terms used "have accumulated settled meaning under the common law [such that] a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Id.* at 20–21, 119 S.Ct. 1827 (internal quotations and citations omitted). Accordingly, the interpretive framework set forth in *Wells* does not require that we consult legislative history where statutory text is unambiguous.

4. Several of our sister circuits have not included materiality among the elements necessary to prove a Section 286 violation. *See, e.g., United States v. Dedman*, 527 F.3d 577, 593–94 (6th Cir.2008) ("[W]e clarify that the elements necessary for a conviction under § 286 are: (1) the defendant entered into a conspiracy to obtain payment or allowance of a claim against a department or agency of the United States; (2) the claim was false, fictitious, or fraudulent; (3) the defendant knew or was deliberately ignorant of the claim's falsity, fictitiousness, or fraudulence; (4) the defendant knew of the conspiracy and intend-

quire proof that any material falsehoods were actually made or presented. "[T]he common law understanding of conspiracy 'does not make the doing of any act other than the act of conspiring a condition of liability.'" *United States v. Shabani*, 513 U.S. 10, 13–14, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994) (quoting *Nash v. United States*, 229 U.S. 373, 378, 33 S.Ct. 780, 57 L.Ed. 1232 (1913)). Nor does Section 286's text require any proof of overt acts. Accordingly, Section 286 does not require proof that the participants actually made or presented any falsehoods, let alone any material ones. *Id.* at 13, 115 S.Ct. 382 ("[A]bsent contrary indications, Congress intends to adopt the common law definition of statutory terms.").

Nonetheless, Section 286 specifies that only conspiracies with a particular purpose are criminal under the statute: the conspiracy must be "to defraud." Following *Neder* and *Wells*, we must presume that Congress incorporated a materiality requirement when it used the term "defraud." But the Government argues that no such materiality element is necessary because Section 286 describes the means through which the conspiracy to defraud must be accomplished. According to the Government, since the intended fraud can be accomplished through the use of "any false, fictitious or fraudulent claim," materiality cannot be a required element. The Government asserts that if materiality were required, "false" and "fictitious" would be rendered surplusage. We disagree.

The Government is correct that subsequent terms used in the statute can unm-

oor "defraud" from its settled common law meaning. Indeed, we infer the incorporation of established common law meanings "unless the statute otherwise dictates." *Neder*, 527 U.S. at 21, 119 S.Ct. 1827 (internal quotations and citation omitted). The Supreme Court's interpretation of 18 U.S.C. § 371 is instructive. Section 371 criminalizes "conspir[acies] . . . to defraud the United States . . . in any manner or for any purpose. . . ." 18 U.S.C. § 371. Although it uses the term "defraud," the Court has held that the statute "is not confined to fraud as that term has been defined in the common law." *Dennis v. United States*, 384 U.S. 855, 861, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). Instead, "[i]t reaches 'any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government[.]'" *Id.* (quoting *Haas v. Henkel*, 216 U.S. 462, 479, 30 S.Ct. 249, 54 L.Ed. 569 (1910)). Thus, "the meaning of 'defraud' must be interpreted in the context of the particular statute that uses the term." *United States v. Menon*, 24 F.3d 550, 556 (3d Cir.1994).

Nevertheless, the Government's focus on the phrase "false, fictitious or fraudulent claims" is incomplete; it ignores that a Section 286 conspiracy to defraud must be to "obtain[ ] or aid[ ] to obtain the payment or allowance of" such claims. Because the purpose of a Section 286 conspiracy must be to obtain payment of a claim, the conspirators must understand, at least implicitly, that the agreed-upon methods of accomplishing the fraud are capable of causing the payment of a claim.[5] Where, as here, the alleged con-

---

ed to join it; and (5) the defendant voluntarily participated in the conspiracy."). We are not aware of any case from our sister circuits, however, that has squarely addressed whether Section 286 requires proof of materiality. Ac-

cordingly, we treat this issue as one of first impression.

5. We recognize that Section 286 also criminalizes conspiracies to defraud by "aiding to obtain the payment or allowance of any false,

spiracy involves the making of false statements or representations, the conspirators must have agreed to make statements or representations that would influence the Government's decision on whether to pay a claim. Such statements or representations are, by definition, material. *See Wells,* 519 U.S. at 489, 117 S.Ct. 921 (understanding materiality to mean " 'hav[ing] a natural tendency to influence, or [being] capable of influencing, the decision of the decisionmaking body to which it was addressed' " (quoting *Kungys v. United States,* 485 U.S. 759, 770, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988))); *see also* Restatement (Second) of Torts § 538(2) (1977).[6] Accordingly, where the Government alleges that the conspirators agreed to make false statements and representations as part of the conspiracy to defraud, Section 286 requires proof that the conspirators agreed that those statements or representations would have a material effect on the Government's decision to pay a false, fictitious, or fraudulent claim.[7]

Our reading is consistent with the Supreme Court's interpretation of a similarly worded statute that was at issue in *Allison Engine Company, Inc. v. United States ex rel. Sanders,* —— U.S. ——, 128 S.Ct. 2123, 170 L.Ed.2d 1030 (2008). There, the Court reviewed a provision in the False Claims Act that imposed civil liability on any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(3) (2006), *amended by* Fraud Enforcement and Recovery Act of 2009, Pub.L. No. 111–21, § 4(a), 123 Stat. 1621 (2009). The Court pointed out that where it was alleged that the conspirators agreed to make a false record or statement, "it must be shown that the conspirators had the purpose of 'getting' the false record or statement to bring about the Government's payment of a false or fraudulent claim." 128 S.Ct. at 2130. This meant that "it must be established that [the conspirators] agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim." *Id.* at 2130–31.

Here, Section 286's language concerning the purpose of the prohibited conspiracy to defraud closely resembles that of the statute analyzed in *Allison Engine. Compare* 18 U.S.C. § 286 ("[B]y obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim . . . ."), *with* 31 U.S.C. § 3729(a)(3) (2006) ("[B]y getting a false or fraudulent claim allowed

---

fictitious or fraudulent claim. . . ." This does not affect our present analysis. Whether the conspirators agree to obtain the payment of claims, or agree to merely aid to obtain the payment of claims, the conspirators must understand that their agreed-upon actions will lead to the payment of claims. *See United States v. Soto,* 539 F.3d 191, 194 (3d Cir.2008) (" 'In order to aid and abet . . . a defendant must do more than associate with individuals involved in the criminal venture. (He must) participate in (the criminal enterprise) as something he wishes to bring about and that he seeks by his action to make succeed . . . .' " (quoting *United States v. Dixon,* 658 F.2d 181, 189 (3d Cir.1981))).

6. According to the Restatement (Second) of Torts § 538(2), a statement is material if:

(a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or

(b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

7. Of course, "[t]he agreement need not be shown to have been explicit. It can instead be inferred from the facts and circumstances of the case." *Iannelli v. United States,* 420 U.S. 770, 777 n. 10, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975)

or paid."). The term "obtain" is synonymous with "get," *Webster's Third New Int'l Dictionary* 953 (1966); *see also id.* at 1559 (listing "get" as a synonym of "obtain"), so we see no substantive difference between the phrases "obtaining ... payment or allowance of any false, fictitious or fraudulent claim" and "getting a false or fraudulent claim allowed or paid." Thus, we read Section 286 in a manner consistent with *Allison Engine:* where it is alleged that the conspirators agreed to make false statements or representations as part of the conspiracy to defraud, it must be established that the conspirators agreed that those statements or representations would have a material effect on the decision to pay a false, fictitious, or fraudulent claim.

Contrary to the Government's suggestion, our reading of Section 286 does not render the terms "false" and "fictitious" surplusage. Aside from materiality, common law fraud also requires proof of scienter. *See* Restatement (Second) of Torts § 526. Therefore, conspirators could agree to make materially false statements or representations in order to obtain payment of claims that were merely false or fictitious. For example, the conspirators could agree to make materially false statements or representations to an innocent third party, who would then file claims based on that materially false information. Since the innocent third party lacks the necessary scienter, the claims filed would be merely false or fictitious, but not fraudulent. Our reading of Section 286, however, would still subject the conspirators to criminal liability.

We emphasize that our holding is limited to cases containing allegations that the conspirators agreed to make false statements or representations as part of the conspiracy to defraud. Section 286's language leaves open the possibility that other conspiracies to defraud may be actionable under the statute; it does not explicitly specify that the conspiracy must involve an agreement to make false statements or representations. Accordingly, we express no view on whether materiality is a required element of any alleged conspiracies that do not involve an agreement to make false statements or representations.

■ In sum, Section 286 does not require proof that material falsehoods were actually made. But where, as here, it is alleged that the conspirators agreed to make false statements or representations as part of the conspiracy, we read Section 286 to require proof that the conspirators agreed that these statements or representations would have a material effect on the decision to pay a false, fictitious, or fraudulent claim.

### III.

■ Having determined that materiality is not an essential element of a Section 287 violation, but is an element for the type of Section 286 violation charged in this case, we must review the Indictment to determine whether it was sufficient.[8] "We deem an indictment sufficient so long

8. We note that Welch, unlike Saybolt, did not challenge the Indictment's sufficiency until after the jury returned a guilty verdict. If Welch's appeal were before us by itself, we would "construe the factual allegations in the indictment liberally" because " 'indictments which are tardily challenged are liberally construed in favor of validity.' " *United States*

*v. Vitillo,* 490 F.3d 314, 324 (3d Cir.2007) (quoting *United States v. Wander,* 601 F.2d 1251, 1259 (3d Cir.1979)). But since Saybolt appeals the denial of his pre-trial motion to dismiss the Indictment, and the Indictment charged the Appellants jointly, we will analyze the Indictment's sufficiency as if both Appellants had raised the issue prior to trial.

as it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" *United States v. Kemp,* 500 F.3d 257, 280 (3d Cir.2007) (quoting *United States v. Vitillo,* 490 F.3d 314, 321 (3d Cir.2007)). The Appellants claim that the absence of the term "material" from the text of the Indictment renders it insufficient. We disagree.

■■■■ An indictment's "primary office" is "to inform the defendant of the nature of the accusation against him." *Russell v. United States,* 369 U.S. 749, 767, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). This is accomplished by identifying the law that is alleged to have been violated and including factual allegations that sufficiently apprise the defendant of the offending conduct. *See* Fed.R.Crim.P. 7(c) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged.... For each count, the indictment or information must give the official or customary citation of the ... provision of law that the defendant is alleged to have violated."); *Hamling v. United States,* 418 U.S. 87, 117–18, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (" 'Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" (quoting *United States v. Hess,* 124 U.S. 483, 487, 8 S.Ct. 571, 31 L.Ed. 516 (1888))). As we have held, " 'no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit

the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.'" *Kemp,* 500 F.3d at 280 (quoting *United States v. Rankin,* 870 F.2d 109, 112 (3d Cir.1989)). Accordingly, "an allegation of fraud in an indictment will be sufficient so long as the facts alleged in the indictment warrant an inference that the false statement is material." *United States v. Creech,* 408 F.3d 264, 269 (5th Cir.2005) (internal quotations and citation omitted); *see also United States v. McAuliffe,* 490 F.3d 526, 532 (6th Cir.2007) (same); *United States v. Ladum,* 141 F.3d 1328, 1334 (9th Cir.1998) (same); *United States v. Adler,* 623 F.2d 1287, 1292 n. 6 (8th Cir.1980) (holding that the indictment was not defective for failing to use the word "materiality" because "sufficient facts are alleged to establish materiality ..."); *United States v. Kirby,* 587 F.2d 876, 882 (7th Cir.1978) (rejecting a claim that the indictment was insufficient for failing to allege materiality because, based on the facts alleged, "[t]he materiality of the false statements is self-apparent ..."); *Gonzales v. United States,* 286 F.2d 118, 121 (10th Cir.1960) ("When the words of a statute do not fully, directly and expressly set forth all of the essential elements constituting the offense described, allegations in the words of the statute are insufficient, but allegations of fact which show materiality will suffice."), *abrogated on other grounds by United States v. Daily,* 921 F.2d 994 (10th Cir.1990).

Here, it is clear that despite its failure to use the word "materiality," the Indictment sufficiently alleged facts that warrant an inference that the false statements the conspirators agreed to make were material. First, the Indictment alleged that the Appellants "recruited people to give them their own or a third party's identification so that defendant WELCH could generate fraudulent individual tax returns falsely claiming tax refunds from the I.R.S., us-

ing, in part, that information." Second, the Indictment specified that the Appellants requested "name[s], address[es], date[s] of birth and social security number[s]." Third, the Indictment charged the Appellants with stating "that a fictional employer . . . had withheld too much money and that each taxpayer was entitled to a refund of federal wage taxes already paid," and "misrepresent[ing] the identified taxpayer to be a fisherman or a farmer and falsely claim[ing] that the taxpayer was entitled to refunds for federal excise taxes falsely claimed to have been paid on off-road uses of gasoline in their fishing and farming businesses." Fourth, the Indictment identified each of the filed tax returns that contained the alleged falsities. These factual allegations suggest that the Appellants agreed to file tax returns that misrepresented the identity of the individuals claiming a refund, the reasons for the refund, and the amount of the refund. Such falsities are undoubtedly " 'capable of influencing . . . the decision of the decisionmaking body to which it was addressed.' " *Wells*, 519 U.S. at 489, 117 S.Ct. 921 (quoting *Kungys*, 485 U.S. at 770, 108 S.Ct. 1537). As a result, the Indictment was sufficient because it alleged facts warranting an inference that the Appellants agreed to make materially false statements as part of their conspiracy to defraud the IRS.

### IV.

■ The final issue we must address is whether Welch is entitled to a new trial because the District Court did not instruct the jury that the Section 286 violation charged in this case required proof of materiality. Our review is for harmless error. *Neder*, 527 U.S. at 15, 119 S.Ct. 1827 (concluding that "the omission of an element [in a jury instruction] is an error that is subject to harmless-error analysis"). An error is harmless when "it ap-

pears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Id.* Here, it is clear that the District Court's failure to instruct the jury on materiality was harmless error. Welch admits that the tax forms submitted to the IRS misrepresented individual and business names, addresses, employment information, gross income, and business expenditures. These misrepresentations are unquestionably material. *Id.* at 16, 119 S.Ct. 1827 ("In general, a false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.' " (quoting *United States v. Gaudin*, 515 U.S. 506, 509, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995))). Therefore, Welch is not entitled to a new trial; it appears beyond a reasonable doubt that, even with an instruction on materiality, the jury would have found that Welch agreed to make materially false statements as part of the conspiracy to defraud the IRS.

### V.

We hold that Section 287 does not require proof of materiality. But where, as here, the alleged Section 286 conspiracy involves the making of false statements or representations, Section 286 requires proof that the conspirators agreed that those statements or representations would have a material effect on the decision to pay a false, fictitious, or fraudulent claim. Here, the Indictment did not use the term "material," nor was the jury instructed on Section 286's materiality requirement. Nonetheless, the Appellants are not entitled to a new trial. Since the factual allegations contained in the Indictment warrant an inference of materiality, the absence of the word "material" does not render it insufficient. Additionally, the District Court's failure to instruct the

jury on materiality is harmless error because the evidence shows beyond a reasonable doubt that the conspirators agreed to make materially false statements as part of the conspiracy. Therefore, we will affirm the Appellants' convictions and sentences.